IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
                                   :
BRIAN RICHARDSON,
                                   :
              Plaintiff,
                                   : Civil Action No.

                                   : 3:01CV1719(JCH)

WILLIAM MIRANDA, ET AL,
                                   :
              Defendants.
                                   :
- - - - - - - - - - - - - - - - - x


        Deposition of SERGEANT WILLIAM ROBERT

        MAYER, taken pursuant to the Federal Rules of

        Civil Procedure, at the law offices of Wiggin

        & Dana, One Century Tower, New Haven,

        Connecticut, before Michelle E. Pappas,

        License #00081, a Notary Public in and for

        the State of Connecticut, on Friday, October

        10, 2003, at 9:21 a.m.


                    SCRIBES, INC.

EXHIBIT

A

1    four-door, Connecticut registration MS3461.  Do you

2    want me to keep reading?

3           Q.   No.  No.

4                MS. BRAZZEL-MASSARO:  Next paragraph, I

5           think.

6           A.   The vehicle was observed to have a bullet

7    hole which entered the right front fender and struck an

8    interior structure.  The projectile was not recovered.

9           Q.   Thank you.  I'm actually -- apologize.  There

10   might have been some confusion.  It's, The vehicle, a

11   1998 Ford Taurus?

12          A.   All right.  The vehicle had heavy front end

13   damage.  The left front wheel and axle were destroyed,

14   along with damage to the left side and rear end.  The

15   front windshield was shattered and the driver's side

16   and passenger side air bags was deployed.  The interior

17   of the vehicle was found in disarray, clothing and

18   other articles were thrown about.

19          Q.   The sentence right before that where it says

20   was processed in the Bridgeport Police Department.

21          A.   Was processed in the Bridgeport Police

22   Department garage.

23                MS. BRAZZEL-MASSARO:  I object to that.

24           I don't think that's exactly what it says.

25          A.   I'm sorry.

SCRIBES, INC.

1    Q.    Read it again.  Sergeant, please read the

2   sentence beginning, The vehicle, a 1998 --

3    A.    The vehicle, a 1998 Ford Taurus SE car,

4   Connecticut Reg. MS3461, VIN number 1FAFP52U4WA242234

5   was processed in the Bridgeport Police garage.

6    Q.    And what exactly do you mean when you use the

7   word "processed"?

8    A.    Basically, it would mean that we examined the

9   vehicle.

10    Q.    And have you examined many vehicles in your

11   career as a detective?

12    A.    Yes.

13    Q.    Roughly how many vehicles have you examined,

14   would you say?

15    A.    I can't give you an exact number, but has to

16   be close to a hundred.

17    Q.    A hundred?

18    A.    Yes.

19    Q.    And when you're examining a vehicle, are all

20   of these vehicles examined at the Bridgeport Police

21   garage?

22    A.    Most are.

23    Q.    Some of them are just examined at the actual

24   crime or accident scene?

25    A.    Yes.

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
                         :

BRIAN RICHARDSON,

            Plaintiff,        :

                      : Civil Action No.

                      : 3:01CV1719(JCH)

WILLIAM MIRANDA, ET AL,

                      :

         Defendants.

                      :

- - - - - - - - - - - - - - - - - x

              Deposition of SERGEANT WILLIAM ROBERT

MAYER, taken pursuant to the Federal Rules of

Civil Procedure, at the law offices of Wiggin

& Dana, One Century Tower, New Haven,

Connecticut, before Michelle E. Pappas,

License #00081, a Notary Public in and for

the State of Connecticut, on Friday, October

10, 2003, at 9:21 a.m.

                  SCRIBES, INC.



EXHIBIT
B

1    A.    Yes.

2    Q.    And are those reports called criminal

3 investigation reports?

4    A.    Yes.

5    Q.    And what type of information will you try to

6 put down in your criminal investigation reports?

7    A.    Basically, information of what I find and

8 what I do, in this case a vehicle, it would be what I

9 found on the vehicle and what I did.

10    Q.    So you would put down, for example, if you

11 found that there was a windshield broken, you would

12 write that down on the criminal investigation report?

13    A.    Yes.

14    Q.    You would write the fact that there's a

15 bullet hole in the vehicle; correct?

16    A.    Yes.

17    Q.    You would write down the fact that there was

18 blood on the exterior of the car in a criminal

19 investigation report?

20    A.    If there was, yes.

21    Q.    If there was blood in the interior of the

22 car, you would write that down on the criminal

23 investigation report?

24    A.    Yes.

25    Q.    If the interior of the car was in disarray,

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
BRIAN RICHARDSON,
                                 :
            Plaintiff,
                                 : Civil Action No.

                                 : 3:01CV1719(JCH)

WILLIAM MIRANDA, ET AL,
                                 :
            Defendants.
                                 :
- - - - - - - - - - - - - - - - x

          Deposition of SERGEANT WILLIAM ROBERT

MAYER, taken pursuant to the Federal Rules of

Civil Procedure, at the law offices of Wiggin

& Dana, One Century Tower, New Haven,

Connecticut, before Michelle E. Pappas,

License #00081, a Notary Public in and for

the State of Connecticut, on Friday, October

10, 2003, at 9:21 a.m.

                    SCRIBES, INC.

EXHIBIT
C

1    previously today?

2        A.   Yes, it does.

3        Q.   And does that document contain true and

4    accurate copies of all the photographs you took of the

5    car, Ford Taurus, on April 23, 2001?

6        A.   Yes, it does.

7        Q.   Sergeant, now I'm going to take you back to

8    April 23, 2001 and ask you questions about that day.

9    If you recall, when did you start working that day?

10       A.   Came in the regular time, I believe seven

11   o'clock.

12       Q.   And was the first time you heard that there

13   had been a possible robbery and an accident on April

14   22, 2001?

15       A.   I didn't hear anything about a robbery or an

16   accident.

17       Q.   When was the first time that someone asked to

18   you examine the 1998 Ford Taurus?

19       A.   It was sometime after I arrived at work.  I

20   mean around 8 o'clock.

21       Q.   Could you describe to me, I guess, who spoke

22   to you about and what the person requested?

23       A.   I'm not 100 percent sure who it was, but I

24   believe it was Captain Resta or Lieutenant Cuminotto

25   asked me to document a vehicle that was in the garage.

SCRIBES, INC.

Q.    So the vehicle was in the garage when you arrived at seven o'clock in the morning?

A.    To my knowledge, yes.

MS. BRAZZEL-MASSARO:  I was going to object to form but he did respond appropriately.

Q.    And then one of those individuals, a Captain Resta or Lieutenant Cuminotto asked you to examine the vehicle?

A.    Yes.

Q.    Did anybody else talk to you about the vehicle on that day?

A.    I really don't remember.

Q.    What did Captain Resta or Lieutenant Cuminotto ask you to do?

A.    Basically, they asked me just to photograph and document the vehicle.

Q.    Is there any specific thing they asked you to look for regarding the vehicle?

A.    No.

Q.    Did they tell you about any of the facts that occurred regarding the vehicle?

A.    All that it was involved in some kind of collision and it was used in a robbery.

Q.    Did they tell you any more information?

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                    :
BRIAN RICHARDSON,
                                    :
           Plaintiff,
                                    : Civil Action No.

                                    : 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
                                    :
           Defendants.
                                    :
- - - - - - - - - - - - - - - - x


          Deposition of SERGEANT WILLIAM ROBERT

     MAYER, taken pursuant to the Federal Rules of

     Civil Procedure, at the law offices of Wiggin

     & Dana, One Century Tower, New Haven,

     Connecticut, before Michelle E. Pappas,

     License #00081, a Notary Public in and for

     the State of Connecticut, on Friday, October

     10, 2003, at 9:21 a.m.


                    SCRIBES, INC.

EXHIBIT
D

1    you been officially assigned to the case?

2         A.   No, I was just -- no, I was assigned just to

3    document the car.

4         Q.   And how long did it take to you examine the

5    car?

6         A.   Maybe an hour, hour and a half.  I can't say

7    specifically.

8         Q.   And did you look at the exterior of the car?

9         A.   Yes.

10        Q.   Did you look at the interior of the car?

11        A.   Yes.

12        Q.   Did you look under the car?

13        A.   I believe one of the wheel wells I did, yes.

14   The wheel wells I -- yes, I did, because there was

15   damage to the axle.

16        Q.   Did you look under the hood?

17        A.   I don't believe so.

18        Q.   If I could show you Plaintiff's Exhibit No.

19   2, you can look at that to refresh your recollection,

20   but as far as you remember, can you please describe to

21   me the damage to the exterior of the car?

22        A.   Well, as it says here in the report, there

23   was heavy front end damage, the axle, the front axle

24   and wheel were destroyed.  There was damage on the left

25   side of the vehicle and the rear end.

54

1          MS. BRAZZEL-MASSARO:  I have very few

2      questions.

3   CROSS-EXAMINATION

4   BY MS. BRAZZEL-MASSARO:

5      Q.   Sergeant, was your sole responsibility in

6   this particular criminal investigation to take

7   photographs of the vehicle both from the exterior and

8   interior?

9      A.   Yes.

10     Q.   Okay.  And did you learn anything at all

11  about the facts and circumstances surrounding the

12  incident which brought that car to the police garage?

13     A.   No.

14          MS. BRAZZEL-MASSARO:  No further

15      questions.

16          MR. KALISH:  Sergeant, thank you for

17      your time.

18          (Time noted:  10:51 a.m.)

19      (Jurat follows on page 55, no omission.)

20

21

22

23

24

25