UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN RICHARDSON, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01CV1719 (EBB) |
| v. | : | |
| WILLIAM MIRANDA, ET AL., | : | January 28, 2005 |
| Defendants. | : | |

**PLAINTIFF'S MOTION *IN LIMINE*
TO EXCLUDE EXPERT TESTIMONY OF DR. LIANE M. PIOLI**

Plaintiff Brian Richardson respectively moves this Court to exclude the proposed expert testimony of Dr. Liane M. Pioli. Defendants retained Dr. Pioli to perform two objective psychological tests, the WAIS-III and MMPI-2, on Plaintiff at the recommendation of Defendants' disclosed expert, Dr. Robert Ostroff. Although Plaintiff was unaware of Dr. Pioli's proposed involvement in this case until late December, he consented to the tests on the understanding that Dr. Pioli would simply administer these tests to Plaintiff and send the results to both Dr. Ostroff and Plaintiff's expert Dr. David Johnson for their review and interpretation. But instead of simply conducting these tests, and to the complete surprise of Plaintiff and his counsel, Dr. Pioli conducted her own clinical evaluation of Plaintiff with the professed intention of determining "whether Mr. Richardson is malingering or distorting his physical and mental symptoms in order to gain monetary rewards in a lawsuit against the City of Bridgeport." Plaintiff received her proposed report on January 25, 2005, and on January 27, 2005 Plaintiff received Defendants' proposed disclosure of Dr. Pioli as an expert in the case.

This Court should exclude the testimony of Dr. Pioli because this disclosure is extremely untimely and will result in substantial prejudice to Plaintiff if her testimony is admitted. For this reason alone, this motion should be granted. This conclusion, however, is especially compelling considering that the only reason Dr. Pioli received an opportunity to see Plaintiff in the first place was because Plaintiff understood, based on representations by Defendants' counsel, that Dr. Pioli would simply administer objective tests and forward the results to the disclosed experts in this action.

## I.  STATEMEMT OF FACTS

On October 31, 2003, Plaintiff disclosed Dr. David Johnson as a psychological expert and provided Defendants and the Court with a copy of his expert report. Dr. Johnson, a clinical psychologist, opined on the issue of whether Plaintiff, Brian Richardson, suffers from post-traumatic stress disorder ("PTSD") as a result of the actions by the Defendants on April 22, 2001. This motion deals with Defendants' subsequent efforts to complete their own expert disclosure, which are summarized briefly below.

On November 6, 2003, the Court (Hall, J.) ordered that Defendants' expert disclosures were due by December 15, 2003. Ex. A. Thereafter, Defendants sought an extension of time "to disclose *an expert* concerning the Plaintiff's claim of Post Traumatic Stress Disorder until 30 days after the Plaintiff is available to meet and be analyzed by a Doctor selected by Defendants to review the claim of Post Traumatic Stress Disorder." Ex. B (emphasis added). On April 20, 2004, this Court granted that motion *nunc pro tunc*. Ex. C. Defendants' expert, Dr. Robert Ostroff, met and interviewed Plaintiff on February 27, 2004. Plaintiff's attorneys consented to Plaintiff's examination by an expert, but Defendants did not disclose the identity of Dr. Ostroff

or the content of the examination until they formally disclosed him on September 10, 2004.[1] *See* Decl. of Daniel Kalish ("Kalish Decl."), January 27, 2005 at ¶ 2.

In March 2004, Defendants' counsel requested "an additional date in order to complete the testing of Mr. Richardson," but provided Plaintiff's counsel with no information as to what sort of testing was purportedly necessary or why it had not been completed at the initial evaluation. Ex. D. On March 17, 2004, Defendants' counsel again wrote Plaintiff's counsel concerning "the ability to do psychological testing for Mr. Richardson so that *my expert* can complete his report." Ex. E (emphasis added). At this time, Defendants still had not identified their expert, and it appeared to Plaintiff's counsel that Defendants sought a second examination of Plaintiff by the same, unidentified expert. Kalish Decl. at ¶ 3. Plaintiff's counsel informed Defendants' counsel that they could not allow a second examination of their client in the absence of any information regarding the identity of the expert, the tests he proposed to conduct, and the reasons why such testing was necessary. Ex. F. This exchange was repeated on several occasions. *See* Exs. G-I.

Defendants ultimately identified and formally disclosed Dr. Ostroff as an expert on September 10, 2004, Ex. J, well after his examination of Plaintiff on February 27. In his expert report, Dr. Ostroff recommended that Mr. Richardson be given the MMPI-2 and WAIS-III. On November 30, 2004, Defendants' counsel wrote Plaintiff's counsel to request that Plaintiff consent to additional testing and to inquire why he had withheld consent. Ex. K. On December 14, 2004, still understanding Defendants' request to refer to Dr. Ostroff, Plaintiff's counsel responded to make clear that they "had never ruled out allowing *Dr. Ostroff* a second visit with Mr. Richardson" but had only required additional information regarding his intended evaluation.

---

[1] Mr. Richardson could not recall the name of the individual who examined him.

Plaintiff's counsel asked Defendants to confirm that Dr. Ostroff's proposed additional testing involved the WAIS-III and MMPI-2. Ex. L. On December 20, 2004, Defendants' counsel did so, Ex. M, and noted *for the first time* that she had scheduled Dr. Liane Pioli to conduct those additional tests "and make them available to Dr. Johnson as well as Dr. Ostroff." *Id.* This was the first time Plaintiff's counsel were aware of Dr. Pioli's proposed involvement. Kalish Decl. at ¶¶ 3-4.

Plaintiff's counsel discussed the proposed tests with Dr. Johnson, who indicated that the WAIS-III and MMPI-2 are objective tests and, therefore, did not need to be administered by Plaintiff's own expert or in the presence of Plaintiff's counsel. Kalish Decl. at ¶ 5. On that basis, and on the understanding that Dr. Pioli would be serving, in essence, as an independent test administrator, Plaintiff's counsel consented to the tests, and agreed to wait to depose Dr. Ostroff until after he could review the results. Neither Plaintiff nor his attorneys had any idea that Dr. Pioli intended to "determine whether Mr. Richardson is malingering or distorting his physical and mental symptoms in order to gain monetary rewards in a lawsuit against the City of Bridgeport." *See* Ex. N (Pioli's expert report). Plaintiff would never have consented to such an evaluation by a new expert.

Dr. Pioli examined Plaintiff Brian Richardson for approximately four hours on January 14, 2005. Plaintiff received her report on Tuesday, January 25, one week prior to trial, and her expert disclosure on January 27. Dr. Pioli's report is 11 pages (singe-spaced) and includes opinions on a wide variety of matters such as PTSD, neurological damage, malingering, intellectual ability in junior high and high school, and Dr. Pioli's interpretations regarding Plaintiff's test results. *Id.*

In their disclosure of Dr. Pioli, Defendants state that her proposed testimony concerns "the tests she administered to Mr. Brian Richardson on January 14, 2005, the rationale for the testing, the procedure for the testing, the use or reason for such testing and her knowledge and experience in the field, the conclusion to be determined, how the testing and answers are analyzed, Mr. Richardson's results and an analysis of those results." Ex. N. The disclosure states that Dr. Pioli will rely not only on Plaintiff's test results, but also his "background."

Plaintiff moves to preclude Dr Pioli's testimony.[2]

## II. ARGUMENT

Dr. Pioli's expert disclosure comes roughly thirteen months after the original disclosure deadline and one week prior to trial. Due to the tardiness of this disclosure, the Federal Rules of Civil Procedure dictate that this Court exclude Dr. Pioli from testifying at trial. This conclusion is especially compelling because Dr. Pioli only received an opportunity to meet and examine Plaintiff in January 2005 on the understanding that she would conduct two objective tests and send those results for evaluation by the disclosed experts.

### A. The Court Should Preclude Dr. Pioli's Testimony Because Her Untimely Disclosure Will Cause Plaintiff Extreme Undue Prejudice.

Under Rule 26(a)(2)(A), a party must "disclose . . . the identify of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." FED. R. CIV. P. 26(a)(2)(a). The Federal Rules further state that expert witness disclosures shall be made either at the time directed by the court or agreed to by stipulation or, in the absence of such an order or stipulation, at least 90 days prior to trial. FED. R. CIV. P.

---

[2] To ensure this Court has the complete correspondence regarding Dr. Pioli's examination of Mr. Richardson, Plaintiff includes correspondence from January 25, 2005. *See* Ex. O.

26(a)(2). Rule 26(a) is enforced by Rule 37(c)(1), which states that "a party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence . . . any witness or information not so disclosed." FED. R. CIV. P. 37(c)(1). According to Rule 37(c)(1), unless the failure to timely disclose was harmless or substantially justified, exclusion of the expert testimony is mandatory.

The purpose of the expert disclosure rules is "to facilitate a fair contest with the basic issues and facts disclosed to the fullest extent practical." *Lohnes v. Level 3 Communications Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (internal quotations omitted). As one court recently noted:

> Thus Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained from failing to unveil an expert in a timely fashion, and thereby potentially deprive a plaintiff of the opportunity to depose the proposed expert opinions of his own, or conduct expert-related discovery.

*Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (internal quotations and citations omitted).

*Hyun v. South Kent School*, 1997 WL 597122 (D. Conn. 1997), is particularly instructive. There, Judge Nevas excluded expert testimony because of a late disclosure long after a deadline of June 1, 1996. The case was set for trial on September 5, 1997. On August 21, 1997, more than 14 months after the disclosure deadline and roughly two weeks prior to trial, the plaintiff disclosed an expert. In precluding the expert from testifying, the court emphasized that the purpose of Rule 26(a)(2) disclosure was not trivial, but was "to give parties a reasonable opportunity to prepare an effective cross-examination of the opposing parties' expert witnesses and, if necessary, arrange for testimony of other experts." *Id.* at *1 (internal quotations omitted). The court emphasized that not only would the defendant be disadvantaged by such a late filing, but that the length of the delay, which was more than a year, was "egregious." *Id.* at *2.

This Court should reach the same conclusion in this case. Here, like the situation in *Hyun*, Defendants disclosed Dr. Pioli an 13 months after the court-imposed deadline of December 15, 2003. Ex. A. This Court granted Defendants a limited extension to disclose *"an expert"* on "Post Traumatic Stress Disorder" thirty days after Defendants' expert examined Plaintiff. Ex. B, C (emphasis added). But Dr. Ostroff examined Plaintiff on February 27, 2004, and Defendants disclosed him as an expert on September 10 2004. Defendants clearly were not "substantially justified" in disclosing Dr. Pioli on the eve of trial. If Defendants wanted an additional mental examination and an additional expert on PTSD, they surely had the right to move this Court for these requests. *See* FED. R. CIV. P. 35(a) (authorizing a court to order a mental or physical examination).

Further, like the situation in *Hyun*, allowing Dr. Pioli to testify will cause significant hardship to Plaintiff. If Dr. Pioli were allowed to testify, this would require Plaintiff's attorneys to research the expert's history, read transcripts of her prior depositions, discuss her opinions with Dr. Johnson, attempt to take her deposition, possibly prepare a *Daubert* motion, consider obtaining additional rebuttal experts in response, and prepare her cross-examination. This is in addition to the fact that his attorneys have to prepare for his case-in-chief and get ready for *sixteen* fact witnesses that Defendants have identified will testify at trial.[3] Further, Plaintiff must focus his energies on the opinions of Defendants' original expert, Dr. Ostroff, whose deposition still remains to be conducted on Friday, January 28. Kalish Decl. at ¶ 8. Dealing with an additional expert this close to trial is anything but harmless. *See, e.g., Engleson v. Little Falls*

---

[3] Defendants disclosed 27 fact witnesses in their pre-trial memorandum, but defense counsel has since represented that the number of witnesses Defendants will likely call is closer to 16.

*Area Chamber of Commerce*, 210 F.R.D. 667 (D. Minn. 2002) (excluding expert that was disclosed roughly *one month late* and *five months* prior to trial).

But not only will Dr. Pioli's expert testimony prejudice Plaintiff, it appears that this expert will provide only limited benefit to Defendants. Defendants already have disclosed an expert on PTSD and alleged malingering by Plaintiff. In fact, Dr. Ostroff (1) has possession of results of the WAIS and MMPI tests conducted by Dr. Pioli, (2) has examined Plaintiff, and (3) has provided similar opinions as Dr. Pioli regarding Plaintiff's PTSD and alleged malingering. Although Plaintiff would have to spend considerable energy trying to impeach Dr. Pioli if her testimony is allowed, the benefit of her testimony to Defendants overall case is minimal at best. *See Engleson*, 210 F.R.D. at 669 (noting how, when deciding whether to exclude an expert for untimely disclosure, the court should consider "the importance of the excluded material" to the late-filing party).[4]

Following the reasoning of *Hyun* and *Engleson*, and pursuant to Rules 26(a)(2) and 37(c)(1) of the Federal Rules of Civil Procedure, this Court should exclude the expert testimony of Dr. Pioli due to the lateness of her disclosure.

### B. Dr. Pioli Should Not Be Allowed to Testify Because Plaintiff Consented to Her Involvement on the Understanding That She Would Serve Merely as a Test Administrator.

The mere fact that Dr. Pioli was disclosed one week prior to trial is reason alone to exclude her testimony. But this conclusion is even more pressing here, considering the only

---

[4] In subsequent phone conversations, Defendants' counsel has represented that Dr. Pioli's testimony may in fact be limited to (1) describing the nature and purpose of the WAIS-III and MMPI-II, (2) identifying Plaintiff's results, and (3) explaining those results. Subject to Dr. Johnson's review of the results to confirm that the tests were administered objectively, Plaintiff submits that Dr. Pioli's testimony would be unnecessary. Her testimony as to (3) would remain objectionable, as it would violate Plaintiff's understanding that such interpretation was to be left to the timely-disclosed experts.

reason Dr. Pioli was allowed to see Plaintiff was on the understanding that she would simply administer the WAIS-III and MMPI-II and then provide the objective test results to the existing experts in this matter, Dr. Ostroff and Dr. Johnson. The request for additional testing of Plaintiff, in fact, was always done in the context of allowing Dr. Ostroff to see these test results to complete his report. See Ex. D (Defendants' counsel stating that she "wanted to complete the testing of Mr. Richardson"); Ex. E (Defendants' counsel noting how she wanted to "do psychological testing for Mr. Richardson so that my expert can *complete his report*") (emphasis added). It was not until this week, when Plaintiff's counsel received Dr. Pioli's expert report, that it became clear that Defendants sought to disclose an additional expert on PTSD and malingering. *See* Kalish Decl. at ¶ 7. In fact, until mid-December, Plaintiff had always understood that Defendants wanted Dr. Ostroff to conduct these further tests and supplement his report. *See* Exs. F, I, L. If Plaintiff had known that Dr. Pioli had been retained not as a test administrator but to "determine whether Mr. Richardson is malingering or distorting his physical and mental symptoms in order to gain monetary rewards in a lawsuit against the City of Bridgeport," or that she mistakenly regarded that as her mandate, he would have never agreed to her involvement.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court exclude the expert testimony of Dr. Pioli.

DATED: January 28th, 2005

Kenneth D. Heath (ct 26359)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: 203-498-4400

Fax: 203-782-2889
E-mail: kheath@wiggin.com

Daniel Kalish (ct 24350)
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Tel:  206-359-8000
Fax:  206-359-9000
E-mail:  dkalish@perkinscoie.com

Attorneys for Plaintiff
Brian Richardson

## CERTIFICATE OF SERVICE

On January 28th, 2005, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following documents:

Barbara Brazzel-Massaro, Esq.
City Attorney's Office, City of Bridgeport
999 Broad Street
Bridgeport, CT 06604

| | |
|---|---|
| __X__ | Via hand delivery |
| ___ | Via U.S. Mail, 1st Class, Postage Prepaid |
| ___ | Via Overnight Delivery |
| ___ | Via Facsimile |
| ___ | Via E-filing |

I certify under penalty of perjury under the laws of the State of Connecticut that the foregoing is true and correct.

DATED at New Haven, CT, this 28th day of January, 2005.

_____
Kenneth D. Heath