# EXHIBIT J

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN RICHARDSON | : | |
| Plaintiff, | : | CIV. NO. 3:01CV1719 (EBB) |
| vs. | : | |
| WILLIAM MIRANDA, ET AL | : | |
| Defendants | : | SEPTEMBER 10, 2004 |

<u>DISCLOSURE OF EXPERT</u>

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, the Defendants, William Miranda, et al, hereby disclose the following expert who may be called at trial:

I.      <u>Name and Business Address</u>

Dr. Robert Ostroff
Spectrum Psychiatric Group, PC
60 Washington Avenue, Suite 304
Hamden, CT  06518

II.     <u>Statement of Opinions</u>

A statement of the opinions to be expressed and the basis and reasons therefore, and information utilized by Dr. Ostroff, are set forth in the attached report of Dr. Ostroff (Exhibit "A").

Dr. Ostroff may also provide opinions in rebuttal to those witnesses called by the Plaintiff.

THE DEFENDANTS

By: _____
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT 06604
Tel: #203/576-7647
Fed. Bar #05746

## CERTIFICATION

This is to certify that a copy of the foregoing "Disclosure of Expert" has been mailed, postage prepaid, on this 10TH day of September, 2004, to:

Daniel Kalish, Esq.
Kenneth D. Heath, Esq.
Wiggin & Dana
One Century Tower
P.O. Box 1832
New Haven, CT 06508

_____
Barbara Brazzel-Massaro
Commissioner of the Superior Court

BMF04124





**SPECTRUM PSYCHIATRIC GROUP, P.C.**

July 20, 2004

Barbara Brazzel-Massaro
Associate City Attorney
City of Bridgeport
Office of the City Attorney
999 Broad Street
Bridgeport, Connecticut 06604-4328

Re:  Brian Richardson

Dear Attorney Brazzel-Massaro,

        Pursuant to your request for a psychiatric
evaluation of Brian Richardson to determine if he
sustained any psychiatric injuries as a result of his
apprehension by the Bridgeport police on April 22, 2001,
I reviewed the following material.

The statement of Darnell Gibson to the Bridgeport police,
dated 5/01/01; the arrest report of officer William
Miranda, dated 4/22/01; the report of police officer
Feola, dated 4/22/01; Brian Richardson's medical records
from the Connecticut Department of Correction through
6/23/03, the Nash Country school records for Brian
Richardson through high school; the report of the Office
of Adult Probation Connecticut Judicial Department of
parole officer, M.Goodwin, dated January 18, 2002; the
report of Manuel Teixeira, dated April 23, 2001; the
report of Fernando Correira, dated April 25, 2001; the
report of Jorge Goncalves, dated April 23, 2001; the
deposition of Brian Richardson, dated November 18, 2003;
the deposition of David Reed Johnson, Ph.D., dated
January 22, 2004 and May 5, 2004; and the report of David
Reed Johnson to Attorney Dan Kalisch of Wiggin & Dana,
dated October 27, 2003.  In addition, I interviewed Brian
Richardson for purposes of psychiatric evaluation on
February 27, 2004 at the Garner Correctional Institution

60 Washington Avenue
Suite 304
Hamden, CT 06518
T (203) 281-2890
F (203) 281-2896

July 20, 2004
Re:  Brian Richardson
Page Two

in Newtown, Connecticut for approximately one hour and forty-five minutes.

In my opinion, while Mr. Richardson endorses many psychological symptoms and physical symptoms, there is a consistent pattern of distortion, exaggeration and contradiction that make his self-report entirely unreliable.  While he does seem to describe some symptoms that might be compatible with posttraumatic stress disorder, there are many contradictions to his history in his own self report that make this an extremely unlikely diagnosis.  I believe that Mr. Richardson's current description of his symptomatology is not believable and is motivated by factors other than major psychiatric disorder.  My reasons for these opinions follow.

Narrative Summary:  Mr. Brian Richardson is a 29 year old, African American male, who currently is incarcerated at the Garner Correctional Institution, having been convicted of three counts of armed robbery in the first degree.  He was convicted of being one of two males who entered Solomar's Restaurant in Bridgeport on April 22, 2001 and robbed three individuals armed with a knife and a gun.  He currently is serving a sentence for these offenses.  Mr. Richardson states that while he was in a car fleeing the crime scene, the police shot at his vehicle and they then beat him fairly severely at the time of his arrest.  Despite having been convicted and identified as carrying a gun by three eyewitnesses, Mr. Richardson continues to proclaim his relative innocence. He does admit to being in the bar and taking a bag of cash, but denies that he was carrying a gun.  On the day of the robbery and alleged assault by the police which resulted in his claim of posttraumatic stress disorder, Mr. Richardson admits that he was both drinking and "smoking weed".  At that time, he was in a vehicle with two friends.  He states that they pulled the vehicle over because he had to urinate.  After they got out of the car, his friend motioned him to follow him and they entered Salimar's restaurant.  Shortly after entering the restaurant, he realized that his friend was committing a robbery because he banished a gun and started ordering people around.  He states that he took a bag of cash that

July 20, 2004
Re:  Brian Richardson
Page Three

he saw hanging behind the bar and ran out.  He got in the car to flee and was chased by the police.  He gives a detailed description of the chase, where the police car was situated behind his car and how it cut them off.  He recalls being shot at while they were speeding away.  He then states he got out of the car and ran because he was convinced that the police were going to kill him.  He started running down the sidewalk and ran into a backyard and hopped over a fence and hid in the corner.  He states that two police came around the corner and saw him.  They had their guns drawn.  They ordered him to put his hands up and he immediately raised both his hands.  He states that he made no effort to resist arrest.  One of the two police officers came over and, unprovoked, hit him on the top of the head with a gun.  He stumbled and then they hit him again.  He states that he fell and was on the ground balled up.  The police kicked him several times while he was down and he scraped his face on the street.  They then put a knee into his back into the cement.  He states they stood him up, yelled racial slurs, dragged him into the car and slammed him into the car.  He states he saw the faces of both officers clearly and will never forget them.  He states that they continued to yell racial epitaphs at him and forced him into the car.  Once he was in the back seat of the car, he states that he blacked out for many minutes and did not come to until he reached the police station.  He states that he told the officers that his hand hurt and that his head hurt and they did nothing to help him.  He states that it was not until many hours after his arrest that he received medical attention and that he required stitches for a cut on the top of his head.

He states that his memory has been impaired since the day of the accident that he attributes to a head injury.  He states that he continues to have nightmares about this event.  He states that he has nightmares which are recurrent that consist of being whipped with a pistol over and over again.  He states that he has flashbacks of the event.  When asked to explain what he means by "flashbacks", he states that he sees the officers chasing him in the car shooting at him.  When asked if he actually remembers that happening from the day of the

July 20, 2004
Re:  Brian Richardson
Page Four

incident, he states that he was aware that they were
being chased and that a gun was being shot at him.  He
states that he has repeated dreams of a gun being pointed
at him and someone firing the gun.
Currently, he describes that he continues to have
nightmares, but less often, and that he has a fear of the
guards.  On three occasions, a guard passed by the office
where I was interviewing Mr. Richardson.  Mr. Richardson
appeared to notice the guard on all three occasions.
Shortly after he told me that he was afraid of guards,
the guard passed by for a third time and he jumped up and
stood in the corner and pointed out that was an
illustration of his fear of the guard.  He complains he
has backache, headache and blurred vision that he
attributes to the beating that he endured at the hands of
the police officer.  He states that he has tingling and
palpitations in his chest at times.  He states that he is
on medications, but they are not working well.  He does
not know the name of his current medications.  He
expresses concern and anxiety over the degree of his
memory problems and wonders if the accident has caused
him to have Alzheimer's disease.  At one point, he states
that he is young for Alzheimer's at age 29.

Mental Status Examination:  Mr. Richardson stated it was
February, 2004.  He did not remember the date in February
or the day of the week.  He stated that he was in the
Garner Correctional Institution and that he had
approximately two and one-half years left on his
sentence.  Currently, he was in H block because of his
medical difficulties.  He knew Garner was located in
Connecticut, but did not know the city.    When asked to
name the last five presidents, he could name Bush, but no
others.  Initially, he stated he was unable to perform
serial sevens.  When given a pen and paper, he was able
to state that 7 from 100 was 93, that 7 from 93 was 86,
that 7 from 86 was 79, that 7 from 79 was 72.  He stated
that he was unable to do this in his head since the head
injury had made it very difficult for him to do math.  He
could not add 7 plus 6.  He states that he has no
strength and no grip since the accident.  When asked to
spell "world" backwards, he was unable to proceed with
the first letter.  When asked to spell "world" forwards,

July 20, 2004
Re: Brian Richardson
Page Five

he was unable to spell "world". He was then asked to
repeat three words forward. I stated "ball, flag, tree".
He immediately muttered "ball, flag, tree, oh I can't
remember them, I have no idea what you asked me to
remember". When then asked to try harder if he could to
remember any of the objects that I asked him to name, he
said he was unable to recall them. Five minutes later
when I asked him if he could remember any of the objects,
he could remember "ball". While he was rather anxious
during the interview, he seemed eager to please and eager
to convey his degree of subjective stress to me. When
asked to write a sentence, he was able to legibly print
"My name is Brian.". When asked to draw a clock with the
hands showing eight o'clock, he correctly drew a clock
face, numbered it correctly and accurately and showed the
hands correctly pointing to eight o'clock.

Personal History: Brian Richardson was born on January
12, 1975 in Newark, New Jersey. His parents were
married, but divorced when he was in early adolescence.
He has a step-sister who is approximately seven years
younger named Keisha. He has not had any contact with
his sister for many years. He states that he primarily
was raised by his mother and that she died approximately
four years ago. He has had no contact with his father in
many years. At some point during childhood, he relocated
to North Carolina where he attended Nash High School and
received average grades. He was athletic in high school
and played football, basketball and was on the track
team. He states that he received a scholarship to attend
East Carolina and attended college for two years after
graduation. He states that he had to quit in order to
support his three children, ages six, ten and eleven.
The children are living with their mother in Raleigh,
North Carolina. He states that they write to each other,
but do not talk. He states that he joined the National
Guard after high school and went to Italy and had no war
experience. He left the National Guard early with a
honorable discharge after three years in order to work.
He is vague about when he attended college and when he
was in the National Guard. He states that approximately
a year prior to his arrest, he left North Carolina and
came to New York. He then drove up to Bridgeport for
reasons that he is very vague about. He states that he

July 20, 2004
Re: Brian Richardson
Page Six

has worked odd jobs in construction and mostly hung out with the wrong crowd. He admits to smoking weed and drinking sporadically. He denies the use of other drugs. He is unclear how he was supporting himself without any regular income prior to his arrest. He denies ever using cocaine, crack or heroin. He admits to trying Ecstasy once.

Medical History: Mr. Richardson states that his medical history is unremarkable, without serious medical problems or surgeries.

Mr. Richardson is currently on medication. He is unclear what medication he is taking.

Review of the Department of Corrections medical record reveals that he was treated up until a year ago with Zoloft, Wellbutrin, Sinequan and Neurontin. I am unable to determine the dosages. The medical record also reveals that over the course of a year and one-half, Mr. Richardson complained of flashbacks, mood swings, anxiety, memory difficulties, headaches, numbness and tingling in his left leg and upper extremities and visual problems.

Dr. Johnson's evaluation on September 17, 2003 revealed a Mississippi PTSD score of 134, a CAP score of five in all three dimensions and a SCL 90 score of 2.58.

Impressions: Brian Richardson has some symptoms that are compatible with the diagnosis of posttraumatic stress disorder, namely a vague complaint of flashbacks characterized by reportedly remembering being chased by the police and feeling like he is being shot at, nightmares which consist of dreams of a policeman pointing a gun at him and a reported startle response to events that remind him of the physical beating that he reportedly took at the hands of the police on the night of his arrest. He has additional complaints of mood swings which he has difficulty characterizing, but describes as sometimes feeling very down, other times feeling very anxious and at times, he admits to feeling "okay". He also has had multiple physical complaints,

July 20, 2004
Re:  Brian Richardson
Page Seven

namely, headache, back pain, numbness and tingling,
blurred vision and memory loss which he attributes
directly to the physical injuries he received while being
arrested.  It is also significant that when being tested
by Dr. Johnson, he received some remarkably high scores
in all three scales that were used that would be
compatible with severe psychiatric stress and distress.

All psychiatric diagnoses are based on the individual's
history as they present it; the clinician's observation
of the individual during a structured interview; at times
ancillary psychological testing reports; the medical
record; and any ancillary medical testing.

Results from the clinical interview:

1.  Mr. Richardson presents as affable, anxious, but
eager to please.

2.  Mr. Richardson presents with difficulty remembering
personal history, being unable to characterize his adult
history, his relationship with his children, remember his
time in college, has only vague recollections of being in
the service and is unable to explain how he came to be
living in Bridgeport or what he was doing to support
himself.  He does, however, remember with crystal clarity
the events of April 22, 2001 where he was arrested and
convicted of armed robbery.  He remembers these events
with absolute clarity, despite the fact that he admits
that he was smoking marijuana and drinking at the time
and got out of his car on a public street to urinate.

3.  Mr. Richardson presents severely impaired on a simple
mental status exam in some areas, but highly functional
in others.  For example, he could correctly draw a clock
face with the correct time, the hands and numbers, but he
is unable to subtract 3 from 100 or 7 from 100.  He was,
however, able to do subtraction when given a pencil and
paper to do arithmetic on.

4.  When asked to repeat three objects, Mr. Richardson
immediately repeated them correctly, and then stated that
he could not remember them, and then said that he had no

July 20, 2004
Re:  Brian Richardson
Page Eight

recollection of what I asked him.  When asked to recall
the objects five minutes later, he was able to recall one
of the three objects.

5.  Mr. Richardson stated that he had aversion to the
guards because of the meeting that he took and he was
hypersensitized to their presence.  On two occasions, a
guard passed by our window and looked in.  Mr. Richardson
appeared to notice the guard, but made no response.
Later in the interview when he was explaining to me his
reaction to guards, the guard passed by, Mr. Richardson
jumped up and went against the wall and said, "See,
that's what happens whenever I see a guard".

6.  Mr. Richardson claims that his memory is completely
intact for the events that happened on April 22, 2001,
that he was ignorant of any crime that was about to be
committed, that he did not have a gun, that he did not
participate in the activities and that he was fooled into
going into the bar by his companion, thinking they were
just going to look for a bathroom.

Data from the Written Record:

1. Three eyewitnesses of the crime on April 22, 2001
identify Mr. Richardson as holding a gun and threatening
them.

2.  The owner of the bar reportedly got in his car and
followed the car that Mr. Richardson got into carrying a
bag of cash from the bar.  The owner then called the
police who responded to his call on the cell phone and
engaged the car in a high-speed chase.

3.  The report submitted by M. Goodwin at the time of
sentence on January 18, 2002, indicates that Mr.
Richardson stated that he fought in Desert Storm.  He
also indicates that the defendant told her that he began
using illegal substances at age 14, and that he used
angel dust, cocaine and marijuana.

July 20, 2004
Re:  Brian Richardson
Page Nine

4.   The testing results from Dr. Johnson indicate an
individual who has suffered severe and perhaps, repeated
trauma on the level of someone who has experienced
multiple sexual assaults or war combat.

5.   The medical records reveal an individual who has had
multiple physical and psychological complaints over the
last year and one-half, including severe memory problems.

6. There are numerous examples of discrepancies in Mr.
Richardson's history that are difficult to explain.
Three eyewitnesses describe the events on April 22, 2001
entirely differently than Mr. Richardson explains them.
Despite pleading guilty to events on that day, Mr.
Richardson states that he is innocent and that he never
had a gun at any time during the robbery and was simply
an unwitting accomplice.  In addition, Mr. Richardson has
very clear memory for the events of that day, including
prior to the robbery, entering the restaurant and being
chased by the police.  This is in marked contrast to all
of his memory difficulties in other areas, including his
personal history, his time in the service, when he went
to school, his relationship with his children, his drug
use and his mental status examination.  Mr. Richardson's
mental status examination is actually quite puzzling.  He
can correctly perform certain tasks that indicate an
intact cognitive functioning on the one hand; on the
other hand, he is unable to do simple arithmetic in his
head and denies being able to recall even three objects
presented to him, despite being able to immediately
repeat them.   The discrepancies in Mr. Richardson's
memory are numerous and very difficult to explain from
any psychological or physiological standpoint.  If Mr.
Richardson, in fact, has significant brain damage as a
result of events of April 22, 2001, why can he recall
with crystal clarity all the events that took place that
day?  (There is no medical documentation of any
significant brain damage.)  This is particularly hard to
understand, given that he admits to "smoking marijuana
and drinking" prior to those events occurring.  It
appears that the only area where Mr. Richardson believes
that his memory is functioning in a completely intact way
is for the events

July 20, 2004
Re:  Brian Richardson
Page Ten


of April 22, 2001.

Dr. Johnson notes that he has extremely high scores on
the psychological tests on the rating scores that he
administered.  These scales do not have any internal
methodology for checking for malingering.  In fact, the
CAP scale relies is a clinician rating scale; the
Mississippi scale is a self-reported scale; and the
symptom checklist is essentially a self-reported scale.
The scores that Dr. Johnson reports Mr. Richardson as
having in these tests are compatible with an individual
who spent significant time in combat or was traumatized
multiple times, such as a rape victim.

There is also numerous conflictual information in the
written records of others.  In the presentencing report,
Mr. Richardson purportedly stated that he was in Desert
Storm, during which time he would have been 14 years old.
He also reportedly admitted to using angel dust and
cocaine, both of which he denied when I questioned him.
He also states that he has no children. He stated that
his mother is deceased in the PSI report.  During his
deposition he stated his mother is visited him.

In summary, there is a plethora of inconsistencies
regarding the facts in this case.  These inconsistencies
particularly in Mr. Richardson's statements and
interviews are heavily weighted towards portraying him as
someone who was traumatized by the events of April 22,
2001.  As I have previously recommended
neuropsychological testing which would include a WAIS and
MMPI, could further delineate the motivation behind these
inconsistencies.  It is my understanding that the
plaintiff's attorney has refused further evaluation.  The
purpose of these tests would be to further delineate the
nature of Mr. Richardson's memory complaints and the
accuracy of his testimony.  In the absence of these
tests, given the consistent and persistent
inconsistencies in both his clinical interview, his
statements in the written record and other's observations
of him, I can only conclude that his descriptions of his
psychological symptoms and distress are motivated by
factors, other than a simple portrayal of his internal

July 20, 2004
Re:  Brian Richardson
Page Eleven


subjective experience.  The evidence is that Mr.
Richardson is an individual with multiple complaints that
are, at times, contradictory, and at times, exaggerated,
but do not lead to a diagnosis of a major psychiatric
disorder.

Sincerely,


Robert B. Ostroff, M.D.

RBO/CM/cam

# EXHIBIT K

**CITY ATTORNEY**
Mark T. Anastasi

**DEPUTY CITY ATTORNEY**
Salvatore C. DePiano

**ASSOCIATE CITY ATTORNEYS**
John H. Barton
Melanie J. Howlett
Russell D. Liskov
Barbara Brazzel-Massaro
John R. Mitola
Ronald J. Pacacha
Lisa R. Trachtenburg

**CITY OF BRIDGEPORT**
**OFFICE OF THE CITY ATTORNEY**

999 Broad Street
Bridgeport, Connecticut 06604-4328



**ASSISTANT CITY ATTORNEYS**

Christine Donahue Brown
Gregory M. Conte
Arthur C. Laske III
R. Christopher Meyer
Stephen J. Sedensky, Jr.

**LEGAL ADMINISTRATOR**
Kathleen Pacacha

Telephone (203) 576-7647
Facsimile (203) 576-8252

November 30, 2004

Attorney Kenneth Heath
Wiggin and Dana
One Century Tower
New Haven, Connecticut

RE: Richardson v. Miranda, et al.

Dear Attorney Heath:

I have just received the Notice of Deposition and Subpoena back from New Jersey with a notation that 4 attempts were made to serve the subpoena to Mr. Sancho and they were not successful. These attempts were made after I sent an investigator to the address in an attempt to serve Mr. Sancho and he was also unsuccessful. Therefore, the deposition scheduled for Friday, December 3, 2004 will not go forward.

As you already know from our telephone conversation, my investigator called Mr. Sancho after receiving the information of the whereabouts of Mr. Sancho from you on November 8, 2004. Mr. Sancho informed my investigator that on the advise of his counsel he would not talk to him but that he planned on testifying. With that said, Mr. Sancho hung up the telephone and we were unable to discuss anything with him regarding the case. Based upon his statements we have attempted to subpoena him but apparently he is intent upon not talking to the defendants counsel. Given the nature of his response and the inability to conduct a deposition of Mr. Sancho, the defendants have no other choice at this time except to submit to the court a Motion in Limine concerning his testimony.

I have also spoken to Dr. Ostroff regarding the action and he is available for trial in this matter. Dr. Ostroff also indicated again that further testing of you client should be done. To date, you have not permitted such. I would like to have you explain your rationale for not permitting the testing Dr. Ostroff has recommended. I would also like to

have you reconsider allowing the defendants to complete the expert analysis that Dr. Ostroff believes necessary.  Let me know your position.

Very truly yours,

Barbara Brazzel-Massaro

# EXHIBIT L

Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, Connecticut
06508-1832
www.wiggin.com

Daniel Kalish
203.498.4579
203.782.2889 fax
dkalish@wiggin.com

**WIGGIN AND DANA**

*Counsellors at Law*

VIA FAX (203-576-8252) & FIRST-CLASS MAIL

December 14, 2004

Barbara Brazzel-Massaro
Office of the City Attorney
999 Broad Street
Bridgeport, CT  06604-4328

Re:    *Brian Richardson v. William Miranda et al.*

Dear Ms. Brazzel-Massaro:

I am writing in response to your December 9 letter, which I received in my mail this morning – and also in response to your November 30, 2004 letter, as it appears my initial response to that letter was not sent.  I apologize for appearing non-responsive.

Regarding Joseph Sancho:  Neither Dan Kalish nor I represent Mr. Sancho, and we have had no communications with him since my one conversation with him that I reported to you some weeks ago.  We have not advised Mr. Sancho to avoid speaking with you or your investigator.  In fact, I expressly told Mr. Sancho that he was free to speak about the case with anyone, including defense counsel, if he so chose.  Further, at no time have we advised or suggested to Mr. Sancho that he should avoid service of a subpoena for his deposition in this case.  Accordingly, we can see no basis for a motion *in limine* directed at his testimony, as he is not a witness that plaintiff's counsel represents or controls.  Moreover, given my own difficulties in contacting Mr. Sancho, I am skeptical that your difficulty in serving him supports an inference that he is deliberately avoiding service.  Regarding the other authors of the statements we produced some months ago, we have provided you with all the information we could obtain as to their whereabouts, and like you we have been unable to communicate with them.

As to Dr. Ostroff, there are two open issues: (1) your request that he be allowed a second evaluation of our client; and (2) the timing of his deposition.  As to the first issue, we have never ruled out allowing Dr. Ostroff a second visit with Mr. Richardson.  Rather, we have simply asked that before such a visit he provide an explanation as to: what tests he was unable to perform at the first visit; why he could not perform those tests; what information he hopes to gain from further testing and why his evaluation is incomplete without it.  Based on his expert report, it appears that Dr. Ostroff intends to perform a WAIS mental functioning exam and an MMPI personality test to test the accuracy of Mr. Richardson's memory and uncover his "motivations" rather than to determine whether he has PTSD.  His report does not indicate whether he has other tests in mind, and we would appreciate a

*New Haven   Stamford   New York   Hartford   Philadelphia*

Attorney Barbara Brazzel-Massaro
December 14, 2004
Page 2

**WIGGIN AND DANA**

*Counsellors at Law*

conclusive statement in that regard. Upon receipt of a statement along the lines outlined above, we can discuss whether and when a second evaluation would take place. If Dr. Ostroff does evaluate Mr. Richardson for a second time, we would reserve the right to have Dr. Johnson review the results and perform his own second evaluation, if necessary.

In light of this first outstanding issue, it is probably premature to schedule Dr. Ostroff's deposition. I think your assessment that it should wait until January is correct. So that you can provide Dr. Ostroff with possible dates, however, I am available any time from the 5th through the 7th, from the 10th to the 12th (excluding our jury selection time), from the 19th to the 21st, and the 24th through the 28th.

Please feel free to call or e-mail me to discuss these issues or any others in the case. I will be away from the office from the 17th to the 28th, but I will be checking both e-mail and voice mail regularly.

Sincerely,

Kenneth D. Heath

cc:    Dan Kalish, Esq.

# EXHIBIT M



**CITY OF BRIDGEPORT**
## OFFICE OF THE CITY ATTORNEY

999 Broad Street
Bridgeport, Connecticut 06604-4328

CITY ATTORNEY
Mark T. Anastasi

DEPUTY CITY ATTORNEY
Salvatore C. DePiano

ASSOCIATE CITY ATTORNEYS
John H. Barton
Melanie J. Howlett
Russell D. Liskov
Barbara Brazzel-Massaro
John R. Mitola
Ronald J. Pacacha
Lisa R. Trachtenburg

ASSISTANT CITY ATTORNEYS

Christine Donahue Brown
Gregory M. Conte
Arthur C. Laske III
R. Christopher Meyer
Stephen J. Sedensky, Jr.

LEGAL ADMINISTRATOR
Kathleen Pacacha

Telephone (203) 576-7647
Facsimile (203) 576-8252

December 20, 2004

Kenneth D. Heath, Esq.
Wiggin and Dana
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832

Re:   **RICHARDSON v. MIRANDA, ET AL**

Dear Attorney Heath:

I am in receipt of your December 14, 2004 letter. I would like to clarify some items that you addressed.

First of all, no one is stating that you suggested to Mr. Sancho that he evade service of a subpoena. However, if my memory is correct, in our telephone conversation about Mr. Sancho you clearly indicated that you spoke with him for about an hour and received information from him. Our office has not been afforded the same opportunity. As I indicated, Mr. Sancho refused to talk to my investigator and, in fact, hung the phone up on him. The Defendants certainly believe that they are entitled to take his deposition before trial. The difficulty has been that we did not have access to his address until recently. Now, Mr. Sancho is out of state and our attempts to subpoena him were also unsuccessful. In light of this difficulty, the Defendants are prejudiced in their defense and presentation of their case. Because of the delay in locating, and now his refusal, we will seek a Motion in Limine to preclude his testimony. As to the remaining individuals who were also disclosed late with no information to locate them, we will file a motion to preclude their testimony.

34

-2-

As to Dr. Ostroff, he has met and performed some testing. His opinion letter speaks to the findings. However, Dr. Ostroff noted that a number of tests which are ordinarily done to assess PTSD were not performed by any professional. I had scheduled Dr. Pioli to perform these tests and make them available to Dr. Johnson as well as Dr. Ostroff. It is our position that without administering the tests there may still be open questions. If you are willing, I will re-schedule the tests immediately so that the final reports will be available in early January. I have sent the dates you proposed to Dr. Ostroff.

Very truly yours,

Barbara Brazzel-Massaro
Associate City Attorney

BBM/ch201

cc:    Dan Kalish, Esq.