1    the vehicle showing the rear end.
2        Q.   Photograph 35, please?
3        A.   It is a close-up of the rear bumper of the
4    vehicle from the left side.
5        Q.   Photograph 36?
6        A.   I believe that is a close-up of the passenger
7    side front mirror.
8        Q.   Photograph 37?
9        A.   That is a close-up of the driver's side
10   rearview mirror, side-view mirror.
11       Q.   Photograph 38?
12       A.   It is a close-up of the lower panel of the
13   driver side of the vehicle.
14       Q.   Photograph 39, please?
15       A.   It is a close-up of the left front quarter of
16   the vehicle.
17       Q.   Photograph 40, please?
18       A.   A close-up of the -- a closer view of the
19   left front fender, front end.
20       Q.   Photograph 41, please?
21       A.   Is a view of the interior front area or the
22   front interior of the vehicle showing the deployed air
23   bags.
24       Q.   Photograph 42, please?
25       A.   It's a close-up of the front right

1    windshield.

2        Q.   Photograph 43, please?

3        A.   It is a close-up of the ignition of the
4    vehicle.

5        Q.   Photograph 44, please?

6        A.   It's another photograph of the front
7    dashboard of the vehicle showing that, the deployed air
8    bags.

9        Q.   Photograph 45, please?

10       A.   Again, it's a close-up of the interior of the
11   vehicle showing the steering column and the deployed
12   driver's side air bag from the steering wheel.

13       Q.   Photograph 46, please?

14       A.   It is a close-up of the front passenger seat
15   showing a wool knit cap, gray and black, and a set of
16   keys and a partial, I guess, eyeglass rim.

17       Q.   Photograph 47, please?

18       A.   Yeah, that is the first photograph in the
19   series showing the case number, and my initials are on
20   it.

21       Q.   If you could go back to Plaintiff's Exhibit
22   No. 1, please.  Actually, withdraw that.

23            If you could look at Plaintiff's Exhibit No.
24   2.

25       A.   Correct.

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - x
                                     :
BRIAN RICHARDSON,
                                     :
            Plaintiff,
                                     : Civil Action No.
                                     : 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
                                     :
            Defendants.
                                     :
- - - - - - - - - - - - - - - - - - x


      Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.



SCRIBES, INC.

1    process that you do when you see a car.
2        A.   It depends on what I'm requested to do with
3    the vehicle by my superiors.
4        Q.   Okay.  Assume that they let you know that
5    there was a car that was possibly involved in a high
6    speed chase and a getaway car for a robbery, if that
7    came to the Bridgeport Police garage, what would you
8    look for?
9        A.   I would look for whatever I was asked to do.
10       Q.   So when police officers give you a car, they
11   say specifically what they want you to look for, for
12   example, we want you to look to see whether or not
13   there's any damage on the car?
14       A.   Yes.
15       Q.   That's to see whether or not there's any
16   possible evidence that could be gleaned from the car?
17       A.   Yes.
18       Q.   And you will not look for anything else
19   beyond what the officer asks you; is that correct?
20              MS. BRAZZEL-MASSARO:  I'm going to
21          object to the form.
22       A.   Rephrase the question.  I don't --
23       Q.   Yeah.  If an officer doesn't ask you to look
24   for something, you will not look for it when you
25   examine the car?

```
 1        A.   That's my discretion.  I have to examine, you
 2   know, if I find something I believe is related to the
 3   crime, common sense, I should know that I have to point
 4   it out, yes.
 5        Q.   And when you're examining a car, will you
 6   often take pictures of the car?
 7        A.   Yes.
 8        Q.   Will you often look at the exterior of the
 9   car?
10        A.   Yes.
11        Q.   Will you often look at the interior of the
12   car?
13        A.   Yes.
14        Q.   When you're taking pictures of the car, what
15   type of things will you photograph?
16        A.   Basically overall pictures of the vehicle
17   itself and anything that we feel is unusual or
18   remarkable about the vehicle that would be out of
19   normal.
20        Q.   Such as if a windshield was broken?
21        A.   Correct.
22        Q.   Air bags were deployed?
23        A.   Yes.
24        Q.   There was blood in the car?
25        A.   Yes.
```

```
1       Q.    If the interior of the car was in disarray?
2       A.    Yes.
3       Q.    There's a bullet hole in the car?
4       A.    Yes.
5       Q.    And, Sergeant, when you're done examining the
6   car, what happens to the car?
7       A.    Again, I notify the supervisor whose case the
8   car is under, and that's up to them.  They may ask to
9   be released or not.
10      Q.    Now, when you use the word "released," what
11  exactly do you mean by that?
12      A.    It means it's released either to the, whoever
13  wants to take it or whoever might take custody of the
14  car after that.
15      Q.    So it's the supervisor's -- withdrawn,
16  please.
17            Did you say -- I apologize.  Did you say it
18  was the sergeant?
19      A.    The sergeant or the supervisor that is
20  responsible for the case.
21      Q.    It's the supervisor who's responsible for the
22  case, and it's that supervisor's decision on whether or
23  not the car will be impounded; is that correct?
24      A.    Yes.
25      Q.    And it's the supervisor's decision whether or
```

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
BRIAN RICHARDSON,                 :
                                  :
            Plaintiff,            :
                                  : Civil Action No.
                                  : 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,           :
                                  :
            Defendants.           :
                                  :
- - - - - - - - - - - - - - - - - x

        Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.

SCRIBES, INC.


EXHIBIT D

```
 1        Q.   So the vehicle was in the garage when you
 2   arrived at seven o'clock in the morning?
 3        A.   To my knowledge, yes.
 4             MS. BRAZZEL-MASSARO:  I was going to
 5        object to form but he did respond
 6        appropriately.
 7        Q.   And then one of those individuals, a Captain
 8   Resta or Lieutenant Cuminotto asked you to examine the
 9   vehicle?
10        A.   Yes.
11        Q.   Did anybody else talk to you about the
12   vehicle on that day?
13        A.   I really don't remember.
14        Q.   What did Captain Resta or Lieutenant
15   Cuminotto ask you to do?
16        A.   Basically, they asked me just to photograph
17   and document the vehicle.
18        Q.   Is there any specific thing they asked you to
19   look for regarding the vehicle?
20        A.   No.
21        Q.   Did they tell you about any of the facts that
22   occurred regarding the vehicle?
23        A.   All that it was involved in some kind of
24   collision and it was used in a robbery.
25        Q.   Did they tell you any more information?
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - x
                                     :
BRIAN RICHARDSON,
                                     :
          Plaintiff,
                                     : Civil Action No.
                                     : 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
                                     :
          Defendants.
                                     :
- - - - - - - - - - - - - - - - - - x

      Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.



SCRIBES, INC.

1  A. Some are classes -- some are regular basic
2  classes for my recertification for police officer.
3  Q. Did you get any specific training on how to
4  investigate or examine automobiles?
5  MS. BRAZZEL-MASSARO: Objection to form.
6  Q. Please answer the question.
7  A. Not specifically vehicles.
8  Q. Did you get any specific training on how to
9  examine objects?
10 A. Yes.
11 Q. What type of objects?
12 A. Anything involving a crime or crime scene.
13 Q. And what exactly -- describe to me the
14 training you received, I guess, involved in examining
15 crime scenes.
16 A. The basic training as to photographing and
17 documenting a crime scene, identifying evidence and
18 collecting evidence.
19 Q. I guess in a, specifically in terms of
20 training and photographing evidence, what exact --
21 describe to me, I guess, the training that you
22 recieved?
23 A. Basically how to photograph a piece of
24 evidence or a scene, how to photograph it in certain
25 steps.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - x
                                                                      :

BRIAN RICHARDSON,

                                                                      :

               Plaintiff,

                                                     : Civil Action No.

                                                      : 3:01CV1719(JCH)

WILLIAM MIRANDA, ET AL,

                                                                      :

               Defendants.

                                                                       :
- - - - - - - - - - - - - - - - - - x

       Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.

                                          SCRIBES, INC.

EXHIBIT F

```
 1        Q.   And what exactly did they teach you?
 2        A.   Photographing overall scenes, more medium
 3   shots and then closer evidence shots.
 4        Q.   And the idea is that you're supposed to do
 5   all three when you're photographing a particular crime
 6   scene?
 7        A.   There's nothing specific, but in general
 8   terms, yes.
 9        Q.   And the idea is that if you believe something
10   that might be criminal evidence, you'll take a closer
11   upshot of it?
12        A.   Correct.
13        Q.   And you also received specific training in
14   how to document a particular crime scene; is that
15   correct?
16        A.   Yes.
17        Q.   Exactly what type of training did you receive
18   regarding how to document a crime scene?
19        A.   Basically, it's, again, documenting,
20   photography, videotaping.
21        Q.   Does it also include writing reports?
22        A.   You could say so, yes.
23        Q.   And what did they train you in terms of, I
24   guess, writing reports on particular crime scenes?
25        A.   Basically, you stick to objective facts when
```

1  you're doing a report.
2  Q.  Did they provide instruction that you're
3  supposed to provide sort of the significant details of
4  the crime scene?
5  A.  Yes.
6  Q.  And they provide sort of training on the fact
7  that you're supposed to provide in an investigative
8  report any objective facts that may be relevant to a
9  particular criminal proceeding?
10 A.  Yes.
11 Q.  Did you get any special training on how to
12 investigate shootings?
13 A.  Yes.
14 Q.  What specific training did you get regarding
15 that?
16 A.  Again, basically a shooting scene, how to
17 photograph it, marking and collecting the evidence
18 involved, how to collect it.
19 Q.  And what did they tell you regarding how to
20 collect it?
21 A.  Basically, I mean, the -- to mark the
22 evidence, to, you know, if -- depending on what you're
23 dealing with, it's really hard to say.  But if you're
24 dealing with a shooting scene, to collect the shell
25 cases, mark them, label them properly, and secure them

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - x
:
BRIAN RICHARDSON,
:
           Plaintiff,
: Civil Action No.
: 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
:
           Defendants.
:
- - - - - - - - - - - - - - - - - - x

       Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.

SCRIBES, INC.


EXHIBIT G

1            MS. BRAZZEL-MASSARO: Objection to the
2       form.
3   Q.  You can answer.
4   A.  I recently found out.
5   Q.  At the time you examined the car did you know
6   that Jose Reyes had fired a shot at the Ford Taurus?
7   A.  No.
8   Q.  When did you realize that Officer Reyes had
9   fired a shot at the Ford Taurus?
10           MS. BRAZZEL-MASSARO: Objection to the
11      form of the question.
12           MR. KALISH: I'll rephrase the question.
13           MS. BRAZZEL-MASSARO: Assuming facts
14      that are not in evidence at this point, and
15      he doesn't have knowledge of.
16  Q.  Is it your conclusion, Officer, that someone
17  shot at the Ford Taurus?
18  A.  No.
19  Q.  Is it your conclusion that a bullet went
20  through the Ford Taurus?
21  A.  No.
22  Q.  If I can take you to Plaintiff's Exhibit No.
23  2, please, if you could read the second paragraph in
24  its entirety, please, Sergeant?
25  A.  Hm-hmm. The vehicle was observed to have a

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - x
                                     :
BRIAN RICHARDSON,
                                     :
            Plaintiff,
                                     :  Civil Action No.
                                     :  3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
                                     :
            Defendants.
                                     :
- - - - - - - - - - - - - - - - - - x

            Deposition of SERGEANT WILLIAM ROBERT

MAYER, taken pursuant to the Federal Rules of

Civil Procedure, at the law offices of Wiggin

& Dana, One Century Tower, New Haven,

Connecticut, before Michelle E. Pappas,

License #00081, a Notary Public in and for

the State of Connecticut, on Friday, October

10, 2003, at 9:21 a.m.

                    SCRIBES, INC.

EXHIBIT

1  bullet hole which entered the right front fender and
2  struck the interior structure -- I'm sorry -- and
3  struck an interior structure.  The projectile was not
4  recovered.  The trajectory of the bullet appeared to
5  have traveled from the rear of the vehicle to the
6  front.
7      Q.   Is it your understanding, Sergeant, that a
8  bullet entered the Ford Taurus?
9      A.   It's my understanding that one did go through
10 it.  I can't say conclusively.
11     Q.   So your understanding that someone that -- is
12 it your understanding that this bullet is from a gun?
13     A.   A bullet from a gun.
14     Q.   That the bullet that entered the Ford Taurus
15 was from a gun?
16     A.   It was a bullet, it should have been from a
17 gun.
18     Q.   Answer's yes?
19     A.   Yes.
20     Q.   And when you examined the car did you have
21 any idea who or had you drawn any conclusion on who had
22 shot that gun?
23     A.   No.
24     Q.   Did you ever come to a conclusion on who had
25 shot that gun?

SCRIBES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
:
BRIAN RICHARDSON,
:
             Plaintiff,
: Civil Action No.
: 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
:
             Defendants.
:
- - - - - - - - - - - - - - - - - x

      Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.

SCRIBES, INC.

EXHIBIT I

```
 1    realistic view, plus the fact to give some kind of
 2    dimension to the hole itself.
 3         Q.   I guess from that scale on the bullet hole,
 4    were you able to draw any conclusion about the distance
 5    the shooter was from the car?
 6         A.   No.
 7         Q.   If I told you that -- if I had you assume
 8    that the bullet was from a nine millimeter, would you
 9    be able to draw any conclusions regarding the distance
10    of the shooter?
11              MS. BRAZZEL-MASSARO:  I'm going to
12         object to any questions regarding that
13         particular area.  I don't think he's been
14         qualified as an expert in that particular
15         area, so I think that you're asking the
16         questions well beyond what his job was in
17         this case and beyond what his expertise would
18         be.
19         Q.   You can answer.
20         A.   No.
21         Q.   Sergeant, is there anything at all that we
22    did not cover today that you would like to add?
23         A.   No.
24              MR. KALISH:  I'm finished.  I have no
25         further questions.
```

SCRIBES, INC.