UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIAN RICHARDSON, | CIVIL ACTION NO. |
| Plaintiff, | 3:01CV1719 (EBB) |
| v. | |
| WILLIAM MIRANDA, ET AL., | January 31, 2005 |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO MOTION *IN LIMINE* CONCERNING TESTIMONY OF WILLIAM MAYER AND TESTIMONY REGARDING A BULLET HOLE OR TRAJECTORY BY ANY WITNESS**

Plaintiff Brian Richardson offers the following points and authorities in opposition to Defendants' motion *in limine* to preclude certain evidence regarding the existence and trajectory of a bullet hole in the vehicle in which Plaintiff was riding on April 22, 2001.

**I.    Statement of Facts**

Plaintiff alleges that, on April 22, 2001, Defendant Jose Reyes assaulted him when Reyes fired his gun at the 1998 Ford Taurus in which Plaintiff was a passenger. At his deposition, Officer Reyes admitted to firing once at the Taurus, and he further admitted that the bullet from his gun struck the Taurus in its right front quarter panel. *See* Reyes Dep. at 44 (Ex. A). A key factual issue at trial, however, will be the position of Reyes at the time he fired at the Taurus. Reyes claims that he fired at the Taurus in self-defense while the car was heading directly towards him, while Plaintiff maintains that Reyes fired at the Taurus from the rear, which would have been contrary to Bridgeport Police Department policy and unreasonable.

To support his claim, Plaintiff intends to call Sergeant William R. Mayer of the Bridgeport Police Department in his case-in-chief. On April 23, 2001, Sergeant Mayer

investigated the Taurus after the incident. Sergeant Mayer examined the vehicle, photographed the vehicle, and issued a report regarding his findings. In his Criminal Investigation Report, Sergeant Mayer wrote that the "vehicle was observed to have a bullet hole which entered the right front fender, and struck an interior structure. . . . Trajactory [sic] of the bullet appeared to have traveled from the rear of the vehicle, to the front." Ex. B. In his deposition, Sergeant Mayer confirmed on several occasions that the Taurus had a bullet hole on its right front fender. Mayer Dep. at 36, 37, 51 (Ex. C). During his investigation, Sergeant Mayer also stuck a fiberglass dowel in the bullet hole to illustrate the position and orientation of the bullet hole. *See* Mayer Deposition at 37, 52 (Ex. C). Sergeant Mayer's photographs of the dowel show that it emanates from the bullet hole in a direction toward the rear of the car. *See* Ex. D.

Defendants now move to preclude Sergeant Mayer from testifying regarding his conclusion that (1) the right front quarter panel contained a bullet hole and (2) the relative trajectory of the bullet (i.e, "rear to the front"). Defendants assert that Mayer has not been qualified as an expert to testify regarding these matters. Defendants also move to exclude other individuals from testifying as to similar conclusions. The Court should deny this motion.

II.     **Argument**

Defendants' motion raises two issues. First, this Court will have to decide whether Sergeant Mayer can testify regarding his conclusion that there was a bullet hole in the right front fender and the trajectory of the bullet. If this Court decides that Sergeant cannot testify about these subjects, then the Court will still have to determine whether his Criminal Investigation Report can nevertheless be admitted as the report of a public agency. Plaintiff will address these distinct legal issues separately.

A.  **Sergeant Mayer Does Not Need To Qualify As An Expert To Testify Regarding the Bullet Hole and the Bullet's Trajectory.**

The Court should deny Defendants' motion for the simple reason that Sergeant Mayer does *not* need to qualify as an expert to testify on these matters. Rule 701 of the Federal Rules of Evidence state that a lay witness may testify as to his opinions if: (1) that testimony is based on the witness' perception, (2) the testimony is helpful to the trier of fact, and (3) the opinions are not based on scientific, technical, or other specialized knowledge. FED. R. EVID. 701; *see also Brady v. Chemical Const. Corp.*, 740 F.2d 195, 201 (2d Cir. 1984) ("Under Fed. R. Evid. 701, a lay witness may testify about his conclusions if they are based upon his perceptions and if they aid the jury in understanding the witness' testimony.").

Here, contrary to Defendants' assertions, Sergeant Mayer's testimony regarding his perception and opinions about the state of the Ford Taurus does *not* constitute expert testimony. Sergeant Mayer will not be asked to testify regarding the bullet's specific angle of incidence relative to the Taurus, how far Reyes was from the Taurus at the time of the shooting, or even whether the bullet came from Reyes' gun. Instead, Plaintiff will simply ask Sergeant Mayer, based on his examination and personal observation of the car, whether he thought the hole was a bullet hole and in what direction he thought the bullet traveled.

In an attempt to exclude this testimony, Defendants vastly exaggerate the complexity of these opinions. These conclusions do not require an understanding of complex metallurgy, sophisticated physics, mathematical computations, terminal speeds, wind resistance, or even comparison of reference points. Instead, to arrive at the conclusion regarding the direction of the bullet, an individual simply needs to examine the bullet hole in the car to see the direction the metal was indented (or the nature of the crease made by the bullet). And although not necessary, that person may also stick a rod in the hole to see what direction the rod goes (which

3

would indicate what direction the bullet went). There is nothing complex about this, and surely does not require one to be an expert.[1]

In a case directly on point, a federal appellate court has specifically held that testimony regarding the direction a bullet appeared to travel did *not* require expert testimony. In *United States v. Pierson*, 503 F.2d 173 (D.C. Cir. 1974) (attached at Ex. E), the issue was whether a lay witness could testify regarding the direction of a bullet that had been shot earlier that night. There, after a robbery and shooting at a motel, an officer was called the scene to investigate. During his investigation, the officer observed a bullet hole in the wall. At trial, this same officer testified about the direction of the bullet and stated that it was his opinion that the bullet had been fired from the central portion of the motel lobby. The defendant objected to this testimony, asserting that the officer, who had not personally seen the shooting, had not been qualified as an expert in "trajectory" of bullets. The lower court admitted this testimony, and the defendant appealed.

On appeal, the federal court stated that "expertise as a basis for an opinion is required only when the inferences to be drawn from given facts demand knowledge not generally possessed by the average layman." *Id.* at 177. The court stated that that the "nature of the hole or crease is indicative of the direction from which a bullet was fired." *Id.* Since this was not particularly complex, the appellate court affirmed, and held that "no special expertise was required" and that a "layman under certain circumstances can look at a bullet hole in a wall and

---

[1] If Defendants believe that Mayer was in dereliction of his duties in opining on the nature of the bullet hole, Defs.' Mot. at 2, or that his conclusions are weak because he did not go to the actual crime scene, *id.* at 6, or that he is not clear by saying "back to front," *id.* at 5, they will have an opportunity to cross-examine Mayer during the trial. Plaintiff submits that these issues go to the weight and credibility of Mayer's testimony, not its admissibility.

4

see whether it appears to come from one direction or another." *Id.* The Court concluded by noting that since the officer had seen the bullet hole, he "would be better qualified than the jury to draw a conclusion regarding the direction from which the bullet was fired" and would give "the jurors a clearer conception of the nature of the bullet hole than had he attempted to describe the features of the hole." *Id.* at 177. Not surprisingly, other courts have reached this same conclusion that lay witnesses can testify about the trajectory of a bullet. *See United States v. Beckford*, 211 F.3d 1266 (4th Cir. 2000) (unpublished opinion) (holding that detective did not need to qualify as an expert to testify regarding bullet trajectory) (attached Ex. F); *People v. Caldwell*, 43 P.3d 663 (Colo. Ct. App. 2001) (holding that officer who investigated vehicle could testify as a lay witness regarding bullet hole and trajectory of bullets) (attached at Ex. G).

The cases relied on by Defendants are entirely misplaced. In *Gates v. City of Memphis*, 210 F.3d 371 (6th Cir. 2000) (unpublished), the appellate court did not hold that an expert was required to testify on bullet trajectory, and there is no indication that the issue was even raised to the court. Further, the court fails to describe what the expert actually did and, thus, it is hard to ascertain how complex his task was. It appears that the expert was attempting to describe the direction of a bullet through a body (not a metal), and was attempting to opine on the "probability of threat" through trajectory analysis that was based on a combination of "physics, anatomy, or physiology," an analysis vastly more complex than what Mayer did here.[2]

---

[2] Defendants' other cited authorities are similarly inapposite. In *Montalvo v. Mantello*, 233 F.Supp.2d 554, 558 (S.D.N.Y. 2002), the court mentions in passing that a ballistics expert apparently testified that a particular bullet matched the bullet from plaintiff's gun. Here, Plaintiff does not intend to use Mayer to testify that the bullet was from Reyes' gun and, thus, any need for expert testimony on this issue is entirely irrelevant. And in *Richmond Marine Panama, S.A. v. United States*, 350 F. Supp. 1210 (S.D.N.Y. 1972), there was apparently expert testimony on

Here, Sergeant Mayer did nothing different than the officer in *Pierson*. He simply looked at the car, noticed there was a hole that resembled a bullet hole, and then made a conclusion regarding the relative direction of the bullet hole. This does not require "special expertise," and as the case law makes clear, this constitutes appropriate lay testimony. In the alternative, if this Court concludes that expert testimony is required to form these opinions, then Plaintiff reserves the right to qualify Sergeant Mayer as an expert at trial.[3]

### B. Sergeant Mayer's Criminal Investigation Report Is Admissible Under Rule of Evidence 803(8)(c).

Sergeant Mayer issued a Criminal Investigation Report regarding his findings from his investigation of the 1998 Ford Taurus. This report is admissible regardless of whether Sergeant Mayer is an expert, or whether he must be an expert to testify as to his findings.

#### 1. Under Rule 803(8)(c), the Expert Status of the Author of Findings in a Public Report Is Immaterial to Their Admissibility.

Rule 803(8)(c) of the Federal Rules of Evidence provides for the admissibility of any "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of

---

"mathematical computations to determine displacement of the vessel, the relationship between the terminal slip speed, water resistance and direction and speed conditions along with other facts to arrive at a trajectory." Defs.' Mot. at 6-7. Based on this, Defendants' conclusion that "the instant action is not quite as complicated as *Richmond*" is a significant understatement.

[3] Defendants' argument that Sergeant Mayer has not been disclosed as an expert and, therefore, cannot testify as one is incorrect. Defendants knew for more than a year that Plaintiff would rely on Sergeant Mayer to testify regarding the bullet hole and the general direction of the bullet; their decision to file their motion *in limine*, in fact, shows they predicted this testimony. Any failure to formally disclose Sergeant Mayer as an expert has been harmless.

trustworthiness." The expression "factual findings" covers not only specific facts, but also the conclusions and opinions based on the factual investigation. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162 (1988); *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (noting how 803(8)(c) applies not merely to "factual determinations in the narrow sense, but also conclusions or opinions that are based upon a factual investigation"). The courts have consistently applied this hearsay exception to police records of factual investigations. *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (police report admissible under 803(8)(c)); *Tokio Marine Mgmt., Inc. v. M/V Zim Tokyo*, 1993 WL 322869, at *9 (S.D.N.Y. 1993) ("It is well settled that a police report itself would be admissible as an exception to the hearsay rule . . . under 803(8)(c).").

As long a report meets the basic requirements of 803(8)(c), "the admissibility of such factual findings is presumed." *Bridgeway Corp.*, 201 F.3d at 143. In this situation, the burden of showing a "lack of trustworthiness" then shifts to the party opposing its admission. *Id.* As the Second Circuit has stated, since reports that fall under 803(8)(C) are "presumed to be admissible in the first instance," *Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991), "the party opposing the introduction of a report bears the burden of coming forward with enough 'negative factors' to persuade a court that a report should not be admitted." *Id.* (internal citations omitted). The party opposing admission "faces a heavy burden in showing untrustworthiness" because the exception of 803(8)(C) is "premised upon the assumption that public officers perform their duties properly without motive or interest other than to submit accurate and fair reports." *Complaint of Nautilus Motor Tanker Co.*, 862 F. Supp. 1251, 1255 (D. N.J. 1994), *aff'd*, 85 F.3d 105 (3d Cir. 1996).

Further, if a report meets the basic requirements of 803(8)(c), the person offering the report does ***not*** need qualify the author as an expert or show that he satisfies the *Daubert* standard. *See Clark v. Claubaugh*, 20 F.3d 1290, 1294-95 (3d Cir. 1994) (stating that it is not required "that the one who undertakes the investigation and authors the report be qualified as an expert before the report becomes admissible" and that "before an objection to the opinion testifier's expert qualifications may be recognized . . . , the party challenging the validity of an official report admitted under 803(8)(C) must come forward with evidence which would impugn is trustworthiness"); *Amerisure Ins. Co. v. Ex-Cell-O Corp.*, 134 F.3d 370 (unpublished) (6th Cir. 1998) ("It is commonplace that the author of an official report submitted pursuant to Rule 803(8)(B) need not be qualified as an expert."); *Complaint of Nautilus Motor Tanker Co.*, 862 F. Supp. at 1255 (rejecting argument that the person did not have author or report did not have sufficient expertise because "the Court must only consider whether the report was compiled in a way that indicates that its conclusions could be relied upon").

Thus, the crux of the issue is not whether the declarant is qualified under Rule 702, but rather whether the report is "trustworthy." The courts consider several factors when deciding whether a report is trustworthy, including (1) timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held; and (4) possible motivational problems. *Beech Aircraft Corp.*, 488 U.S. at 167 n.11. The Second Circuit has emphasized that the finality of the report is a fifth criteria to consider. *Gentile*, 926 F.2d at 151. When considering these factors, "no one factor is dispositive." *Complaint of Nautilus*, 862 F. Supp. at 1255.

## 2. Defendants Have Failed to Meet Their Burden of Showing that The Report Is Untrustworthy.

Here, there can be little doubt that the Criminal Investigation Report meets the basic requirements of 803(8)(c). Sergeant Mayer conducted a factual investigation pursuant to his police investigative powers.

Further, Defendants have failed to meet their "heavy" burden of showing enough "negative" factors to render Sergeant Mayer's report untrustworthy. Instead, all the facts indicate just the opposite. Sergeant Mayer had been a detective for more than six years before his investigation, and had received significant detective training before accepting that position. Mayer at 12, 13, 14. Further, he has significant experience examining shooting scenes and had investigated close to *100 vehicles* prior to investigating the 1998 Ford Taurus. Mayer Dep. at 16, 19. Moreover, he examined the particular car only nine hours after the shooting incident, and issued a *final* report. Mayer Dep. at 28; *Gentile* 926 F.2d at 151 (noting importance of finality in deciding "trustworthiness").

But most important, Sergeant Mayer's report is especially trustworthy considering that Sergeant Mayer had no bias against Officer Jose Reyes and had no motive to issue a conclusion that could cause Officer Reyes to suffer civil liability. If anything, Sergeant Mayer would have had precisely the opposite motive regarding his fellow officer. This Court should conclude that Defendants have failed to show enough "negative factors" on why this report does not meet the exception under 803(8)(c) and, therefore, should decide that it is admissible *See Gentile* 926

9

F.2d at 151 (affirming district court's decision to admit report under 803(8)(c) because party opposing admission had failed to provide enough "negative factors").[4]

### III. Conclusion

For the foregoing reasons, this Court should deny Defendants' motion.

DATED: January 31, 2005

_____
Kenneth D. Heath (ct 26359)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: 203-498-4400
Fax: 203-782-2889
E-mail: kheath@wiggin.com

_____
Daniel Kalish (ct 24350)
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Tel: 206-359-8000
Fax: 206-359-9000
E-mail: dkalish@perkinscoie.com

Attorneys for Plaintiff
Brian Richardson

---

[4] Defendants finally contend that any other statement regarding the hole should be inadmissible as hearsay. Without knowing the statements to which Defendants' refer, it is impossible to tell whether they constitute inadmissible hearsay or not.

10

## CERTIFICATE OF SERVICE

On January 31, 2005, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following documents:

Barbara Brazzel-Massaro, Esq.
City Attorney's Office, City of Bridgeport
999 Broad Street
Bridgeport, CT 06604

|     |                              |
| --- | ---------------------------- |
| ___ | Via hand delivery            |
| ___ | Via U.S. Mail, 1st Class, Postage Prepaid |
| ___ | Via Overnight Delivery       |
| _X_ | Via Facsimile                |
| ___ | Via E-filing                 |

I certify under penalty of perjury under the laws of the State of Connecticut that the foregoing is true and correct.

DATED at New Haven, CT, this 31st day of January, 2005.

_____
Kenneth D. Heath