# Exhibit A

COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - x
                                      :
BRIAN RICHARDSON,                     :
                                      :
            Plaintiff,                :
                                      : Civil Action
      vs.                             :
                                      : No. 301CV1719
WILLIAM MIRANDA, FRANK DELBOUNO       :      (JCH)
and JOSE REYES,                       :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - x

        Deposition of JOSE O. REYES, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Bonita Cohen, a Registered Merit Reporter and Notary Public in and for the State of Connecticut, License Number 00041, on Wednesday, November 12, 2003, at 9:20 a.m.

SCRIBES, INC.

1  suspect vehicle after it passed you?
2       A.   Absolutely.
3       Q.   Sergeant, when you discharged your weapon at
4  the suspect vehicle, did you aim?
5       A.   I can't say -- yes.  Well, again, when we
6  conducted a felony stop, I had my service weapon
7  pointed at the car.  So it was aimed at the car.
8       Q.   What part of the car were you aiming at?
9       A.   I can't recall.  I mean, everything happened
10 so fast.
11      Q.   But you had time to aim?
12      A.   Yes.
13      Q.   And it's your testimony that the bullet first
14 entered the car in its right front quarter panel?
15      A.   Yes.
16      Q.   And then what happened, after the car passed
17 you?
18      A.   After it passed me, it slowed down, and it
19 was on the intersection of Brooklawn Place and --
20 again, I don't know if that's Wood or Laurel Avenue
21 from where we turned on.  And the victim's car struck
22 it from behind.
23      Q.   Let me get it straight.
24           After the car passed you, did you get back
25 into your police vehicle?

# Exhibit B

# CRIMINAL INVESTIGATION REPORT

| REPORT TYPE: | Supplemental | CASE # 01D-714 |
|---|---|---|
| TYPE OF CRIME/INCIDENT: robbery | DATE/TIME OF CRIME/INCIDENT: 04/22/01 | DATE OF REPORT: 04/23/01 |

On 4/23/01 DET. W. MAYER, along with the reporting DET. processed a motor vehicle which was used in a robbery, on 4/22/01. The vehicle a 1998 FORD TAURUS SE 4 door, CT. REG MS3461, VIN # 1FAFP52U4WA242234, was processed in the BPT POLICE garage.

The vehicle had heavy front end damage, [ left front wheel, and axle were destroyed], along with damage to the left side, and rear end. The front windshield was shattered, and the drivers side, and passenger side airbags were
deployed. The interior of the vehicle was found in disarray, clothing, and other articials were thrown about.

The vehicle was observed to have a bullet hole which entered the right front fender, and struck a interior stucture. The projectile was not recovered.
The trajactory of the bullet appeared to have traveled from the rear of the vehicle, to the front.

The vehicle was photographed, and then released to BERNIE'S TOWING COMPANY, at 11. 20 am, per operator # 27.

| REPORT OF: Det. William Mayer | REVIEWED BY: | |
|---|---|---|
| SIGNATURE: Det. W. May | CASE STATUS: con't. | PG 1 OF 1 |

© 1994 Hunt & Hanahan Computer Designs    4/24/2001    3:31:17 PM    BPT-1363

# Exhibit C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - x
                                    :
BRIAN RICHARDSON,
                                    :
        Plaintiff,
                                    : Civil Action No.
                                    : 3:01CV1719(JCH)
WILLIAM MIRANDA, ET AL,
                                    :
        Defendants.
                                    :
- - - - - - - - - - - - - - - - - - x


        Deposition of SERGEANT WILLIAM ROBERT MAYER, taken pursuant to the Federal Rules of Civil Procedure, at the law offices of Wiggin & Dana, One Century Tower, New Haven, Connecticut, before Michelle E. Pappas, License #00081, a Notary Public in and for the State of Connecticut, on Friday, October 10, 2003, at 9:21 a.m.


SCRIBES, INC.

```
1      Q.   What position did you enter in 1987?
2      A.   When I was entered it was a recruit until
3  March of '88.
4      Q.   What position or title did you hold in March
5  of 1988?
6      A.   When I graduated the academy I was a
7  patrolman.
8      Q.   How long were you patrolman for?
9      A.   Approximately seven years.
10     Q.   So about 1995?
11     A.   '94 I became a detective, so that would have
12  been more correct.
13     Q.   So you became a detective in 1994 for the
14  Bridgeport Police Department?
15     A.   Yes.
16     Q.   How long were you a detective for?
17     A.   Six years.
18     Q.   Then what did you -- title did you hold after
19  becoming a detective?
20     A.   I was an investigative detective.
21     Q.   Until the year of 2000, correct, or after the
22  year 2000?
23     A.   I became a sergeant, actually, in 2001.
24     Q.   Okay.
25     A.   Approximately.
```

1   Q.   Sure. So I get this clear, so you stopped
2   becoming a detective in 2001, that's when you became a
3   sergeant?
4   A.   Correct.
5   Q.   When you became a detective, Sergeant, what
6   training did you get to become a detective?
7   A.   Just the general investigative courses.
8   Q.   And how long do those last or are those
9   continuing or --
10  A.   It's the beginning basis of training as it's
11  available, plus my recertification training as a police
12  officer.
13  Q.   And how long does the initial training last?
14  A.   For a detective?
15  Q.   Correct.
16  A.   Basically, it's, it's four weeks.
17  Q.   Sergeant, would you please describe to me, I
18  guess, what type of training you received in those four
19  weeks?
20  A.   Basically, interviewing and interrogation
21  classes, some evidence collecting classes, some report
22  writing classes.
23  Q.   And the continuing education were as similar,
24  you would just get similar classes or were they
25  different?

1   A.   Some are classes -- some are regular basic
2   classes for my recertification for police officer.
3   Q.   Did you get any specific training on how to
4   investigate or examine automobiles?
5             MS. BRAZZEL-MASSARO:   Objection to form.
6   Q.   Please answer the question.
7   A.   Not specifically vehicles.
8   Q.   Did you get any specific training on how to
9   examine objects?
10  A.   Yes.
11  Q.   What type of objects?
12  A.   Anything involving a crime or crime scene.
13  Q.   And what exactly -- describe to me the
14  training you received, I guess, involved in examining
15  crime scenes.
16  A.   The basic training as to photographing and
17  documenting a crime scene, identifying evidence and
18  collecting evidence.
19  Q.   I guess in a, specifically in terms of
20  training and photographing evidence, what exact --
21  describe to me, I guess, the training that you
22  recieved?
23  A.   Basically how to photograph a piece of
24  evidence or a scene, how to photograph it in certain
25  steps.

1  you're doing a report.

2  Q. Did they provide instruction that you're
3  supposed to provide sort of the significant details o
4  the crime scene?

5  A. Yes.

6  Q. And they provide sort of training on the fa
7  that you're supposed to provide in an investigative
8  report any objective facts that may be relevant to a
9  particular criminal proceeding?

10 A. Yes.

11 Q. Did you get any special training on how to
12 investigate shootings?

13 A. Yes.

14 Q. What specific training did you get regardi
15 that?

16 A. Again, basically a shooting scene, how to
17 photograph it, marking and collecting the evidence
18 involved, how to collect it.

19 Q. And what did they tell you regarding how t
20 collect it?

21 A. Basically, I mean, the -- to mark the
22 evidence, to, you know, if -- depending on what you'
23 dealing with, it's really hard to say. But if you'r
24 dealing with a shooting scene, to collect the shell
25 cases, mark them, label them properly, and secure th

```
 1      Q.   Read it again.  Sergeant, please read the
 2   sentence beginning, The vehicle, a 1998 --
 3      A.   The vehicle, a 1998 Ford Taurus SE car,
 4   Connecticut Reg. MS3461, VIN number 1FAFP52U4WA242234
 5   was processed in the Bridgeport Police garage.
 6      Q.   And what exactly do you mean when you use the
 7   word "processed"?
 8      A.   Basically, it would mean that we examined the
 9   vehicle.
10      Q.   And have you examined many vehicles in your
11   career as a detective?
12      A.   Yes.
13      Q.   Roughly how many vehicles have you examined,
14   would you say?
15      A.   I can't give you an exact number, but has to
16   be close to a hundred.
17      Q.   A hundred?
18      A.   Yes.
19      Q.   And when you're examining a vehicle, are all
20   of these vehicles examined at the Bridgeport Police
21   garage?
22      A.   Most are.
23      Q.   Some of them are just examined at the actual
24   crime or accident scene?
25      A.   Yes.
```

1   black kerchief, some tools on the floor, and No. 2
2   marker.
3       Q.   Why is the No. 2 marker placed there?
4       A.   Because when examining the vehicle it was
5   brought to our attention it was used in a robbery.
6   It's very common for people who commit robberies to
7   wear something over there heads or face to hide their
8   identity.
9       Q.   How about Photograph No. 15, please?
10      A.   15 is, I believe it's showing the front
11  driver side door.
12      Q.   And can you tell what's contained in that
13  pocket there?
14      A.   Appears to be some type of paperwork.
15      Q.   How about Photograph No. 16?
16      A.   16 again is the rear seat showing more
17  visible the blue and orange shirt.
18      Q.   Photograph No. 17?
19      A.   It's the exterior view of the vehicle showin
20  the passenger side from the front angle.
21      Q.   Is that hole in the car, is that a bullet
22  hole, as far as you recall?
23      A.   We believe it to be, yes.
24      Q.   And what is that sticking out of the car?
25      A.   It's a fiberglass or wooden dowel that was

```
 1   stuck in the hole.
 2       Q.   Did you stick that in there?
 3       A.   I believe I did, yes.
 4       Q.   Why?
 5       A.   First of all, to give dimension to where the
 6   photograph is, to show where it is, to possibly show a
 7   direction.
 8       Q.   Photograph No. 18?
 9       A.   That is showing -- that is the front
10   passenger side of the vehicle showing partial air --
11   partial photograph of the air bag that's deployed, and
12   there's red tape on the floor and the door's open.
13       Q.   Photograph No. 19, please?
14       A.   It is a medium view of the right front fender
15   of the vehicle showing the tire deflated.
16       Q.   Was that the same fiberglass dowel sticking
17   out that you had mentioned previously?
18       A.   Yes.
19       Q.   Photograph No. 20, please?
20       A.   Again, that is another angle of 19 from the
21   rear end of the vehicle, looking at it.
22       Q.   Photograph No. 21, please?
23       A.   It is a close-up of the bullet hole in the
24   vehicle with a scale attached.
25       Q.   With a what attached?
```

```
 1   bullet hole which entered the right front fender and
 2   struck the interior structure -- I'm sorry -- and
 3   struck an interior structure.  The projectile was not
 4   recovered.  The trajectory of the bullet appeared to
 5   have traveled from the rear of the vehicle to the
 6   front.
 7         Q.   Is it your understanding, Sergeant, that a
 8   bullet entered the Ford Taurus?
 9         A.   It's my understanding that one did go through
10   it.  I can't say conclusively.
11         Q.   So your understanding that someone that -- is
12   it your understanding that this bullet is from a gun?
13         A.   A bullet from a gun.
14         Q.   That the bullet that entered the Ford Taurus
15   was from a gun?
16         A.   It was a bullet, it should have been from a
17   gun.
18         Q.   Answer's yes?
19         A.   Yes.
20         Q.   And when you examined the car did you have
21   any idea who or had you drawn any conclusion on who had
22   shot that gun?
23         A.   No.
24         Q.   Did you ever come to a conclusion on who had
25   shot that gun?
```

1    A.   No.

2    Q.   At the time you examined the car, Sergeant,
3  had you been told how the car happened to have a bullet
4  hole in it?

5    A.   I don't recall anyone telling me that
6  specifically.

7    Q.   If I could take you to Plaintiff's Exhibit
8  No. 3, look at Photograph No. 19, please. You
9  discussed earlier that fiberglass dowel there. What is
10 the purpose of that fiberglass dowel?

11   A.   It is used to fit into any holes or possible
12 bullet holes to give some type of dimension to the hole
13 itself and to maybe give a relative position.

14   Q.   That fiberglass dowel, they're used also to
15 show the trajectory of the bullet?

16   A.   Yes, it is.

17   Q.   Sir, if you could look to Photograph No. 21,
18 please, you mentioned that there was a scale of that,
19 scale of the bullet hole?

20   A.   Yes.

21   Q.   What's the purpose of that scale?

22   A.   A scale is put in every photograph where you
23 have something where you can't really give two
24 dimension. It's used to, so that if you want to later
25 on blow the photograph up, to give it one-on-one

# Exhibit D



⑲



⑳