UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN RICHARDSON            :
                            :
            Plaintiff,      :   CIV. NO. 3:01CV1719 (EBB)
                            :
vs.                         :
                            :
WILLIAM MIRANDA, ET AL      :
                            :
            Defendants      :   FEBRUARY 18, 2005


DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO PRECLUDE DR. PIOLI

**HISTORY OF CASE**

The present action was originally filed by Brian Richardson pro se. Thereafter, on May 19, 2003, as the case was approaching a trial date, the Court determined that it would be appropriate to appoint pro bono counsel to aid Mr. Richardson for trial. As a result, the Court appointed Attorney Daniel Kalish as counsel for Mr. Richardson (Exhibit A).

On June 18, 2003, the Court conducted a telephone conference at which time the Court, upon request of Attorney Kalish, extended the discovery period until October 18, 2003 for Attorney Kalish to conduct some discovery. After that

conference, counsel for the Plaintiff proposed to disclose his experts, if any, by August 18, 2003 (Exhibit B). In June, 2003, without any order of the Court, an appearance was also entered by Kenneth Heath (C).

Thereafter, Plaintiff's counsel requested another extension to disclose experts to which the Defendants had no objection. Dr. David Johnson was disclosed on October 31, 2003 as an expert concerning post traumatic stress disorder (Exhibit D). Thereafter, the first date available for his deposition was January 6, 2004. It was continued to January 22, 2004 (Exhibit E). Because of another appointment, the deposition could not be completed and, although Defendants requested additional dates, it could not be rescheduled until May 5, 2004 (Exhibit F).

After the first deposition, the Defendants employed an expert to meet Mr. Richardson and to review the opinion of Dr. Johnson with the possibility of disclosure as an expert, if appropriate. The expert met and interviewed Brian Richardson on February 27, 2004 at the correctional facility (Exhibit G – Ostroff Report, pages 1-2). As a result of the interview of Mr. Richardson and a review of the first deposition of Dr. Johnson, Dr. Ostroff recommended to counsel that Defendants should further explore his claims by having specific tests performed to absolutely determine if there was any validity to Richardson's claim. This further testing was not permitted.

The Defendant then request an expert opinion from Dr. Ostroff which included the materials, testing and interview of Mr. Richardson. A report from Dr. Ostroff was provided which stated in part: (1) "Dr. Johnson notes that he has extremely high scores on the psychological tests on the rating scores that he administered. These scales do not have any internal methodology for checking for malingering," and (2) "As I have previously recommended neuropsychological testing which would include a WAIS and MMPI, could further delineate the motivation behind these inconsistencies. The purpose of these tests would be to further delineate the nature of Mr. Richardson's memory complaints and the accuracy of his testimony. In the absence of these tests, given the consistent and persistent inconsistencies in both his clinical interview, his statements in the written record and other's observations of him, I can only conclude that his descriptions of his psychological symptoms and distress are motivated by factors others than a simply portrayal of his internal subjective experience." (Exhibit G – pages 10-11).

What, in fact, occurred after a review of the report of Dr. Johnson, his partial deposition and the subsequent interview by Dr. Ostroff is that the Defendants' expert expressed an opinion that the tests and interview did not support the Plaintiff's claims. Dr. Ostroff specifically indicated, after his interview and up until the time of

preparing his report, that additional testing was needed. In fact, counsel for the Defendants, within two weeks after the interview of Mr. Richardson, and thereafter, indicated that testing of Mr. Richardson was necessary (Exhibit H).

In an attempt to move the process along, the City contacted Dr. Pioli to perform the tests that Dr. Ostroff had noted in his report (Exhibit I). The Defendants did not make their client available and, on March 17, 2004, they again wrote to get approval so that they could go forward (Exhibit J). While these discussions were ongoing, the Defendants had not disclosed any experts because, based upon the requests, they had not completed the evaluation and Dr. Johnson's deposition had not been completed.

The Defendants confirmed the testing for Mr. Richardson for Saturday, March 27, 2004 at 1:00 p.m. and were prepared to go forward to complete the work they believed was necessary for a full evaluation (Exhibit K). On the Monday following, counsel discovered that, without any notice, Plaintiff's counsel had cancelled the interview and testing (Exhibit L). For the first time Plaintiff made demands which were received in April, 2004. The parties had discussions thereafter but no agreement could be reached to allow the testing. In fact, the Plaintiff's demands in their May 4, 2004 letter to receive a report were met when Dr. Pioli

BMF05026                                    4

finally did the testing. Her report and the actual test results were sent within days of her interview to Plaintiff's counsel and Dr. Johnson.

The Defendants disclosed their expert report of Dr. Ostroff without additional testing because the Plaintiff would not agree, without concessions, that additional testing could be done. As a result of the ongoing disagreement about additional testing, the report of Dr. Ostroff was not submitted until September 10, 2004. There was no discussion about what testing should be done or specifically who was to complete it until the Defendants, once again, raised the issue that Dr. Ostroff recommended further testing (Exhibit M). The parties continued discussions about the tests and, by way of letter dated December 20, 2004, the Defendants again reiterated Dr. Ostroff's position from his report that the tests should be performed by Dr. Pioli (Exhibit N).

On December 20, 2004, again Defendants requested permission to have Dr. Pioli examine and test Mr. Richardson (Exhibit N). Obviously, Plaintiffs agreed to this after a delay of almost ten (10) months. Dr. Pioli met Mr. Richardson on January 14, 2005 (Exhibit O – Report). Within six (6) days of her exam the test results were sent to the attorney for the Plaintiff. Once the results of the tests were

sent, the Plaintiff's counsel raised the issue that they objected to the disclosure of Dr. Pioli and the introduction of her results.

**ARGUMENT**

**A.   The Defendants' Disclosure In January Was The Result Of Plaintiff's Insistence To Be Provided Premature Expert Disclosure**

The Plaintiff now contends that the report and testing of Dr. Pioli should not be admitted because it is so close to trial. First of all, that is no longer an issue because Plaintiff has three (3) months to conduct the deposition. Therefore, given the change of dates, the disclosure has been made more than 90 days prior to trial.[1]

Instead of permitting the Defendants to complete the full evaluation of Mr. Richardson in response to the opinions expressed by Dr. Johnson, Plaintiff's counsel insisted that the Defendants disclose prematurely the exact nature of the Defendants' concerns or opinions. It was quite possible that the Defendants would complete the evaluations and determine that no expert would be disclosed for the Defendants. However, prior to making that decision, the Defendants certainly had a right to a full and fair evaluation without disclosing the areas of the Plaintiff's claims that the Defendants determined may be weak.

---

[1] In an effort to address this issue, counsel for the Defendants has offered to make Dr. Pioli available for a deposition by Plaintiff's counsel.

The rules permit the Defendants to utilize so-called experts for consultation and not disclose these experts [Federal Rule 26(b)(4)]. In the instant matter the Defendants had every right not to disclose an expert, if any, until after they had a full analysis. The Plaintiff's requests to inform them of the rationale for requiring additional tests is not required disclosure within the rules. Defense counsel informed counsel for the Plaintiff of this fact (Massaro Affidavit). Lowery v. Circuit City Stores, Inc., 158 F.3d 742 (4th Cir. 1998) cert. granted, judgment vacated on other grounds, 527 U.S. 1031, 119 S. Ct. 2388 (1999). The Defendants had no obligation until it was determined whether any expert should be disclosed to provide the Plaintiff with what is attorney work product regarding discovery of possible expert opinions.

Therefore, the Defendants did not have an obligation to specify what counsel, through the experts, were questioning or opposing in regard to the Plaintiff's claim of PTSD.

**B.   The Plaintiff Has No Basis In Law To Exclude The Testimony Of Dr. Pioli**

The purpose of Federal Rule of Civil Procedure 26(a) is to prevent an ambush, resulting in surprise or prejudice of undisclosed or late disclosed evidence. Equant Integrations v. United Rentals, Inc., 217 F.R.D. 443 (2003). In Equant, the court set forth the general rule that preclusion is appropriate "UNLESS" (emphasis

court set forth the general rule that preclusion is appropriate "UNLESS" (emphasis added) there is "substantial justification for the failure, the failure to make disclosure is harmless or the prejudice may be remedied by the party." Equant, supra at 114.

In the analysis of this remedy the court stated that this is a drastic remedy and that it should only be utilized when the failure to comply was both "unjustified and prejudicial." In the instant action the facts set forth above allow the court to see an attempt to obstruct a complete expert evaluation by the Defendants. The Plaintiff made demands beyond what is permissible in order to allow the Defendants to conduct testing recognized by their own expert as well as the Defendants' proposed expert. In hindsight, it is easy to see that the Plaintiff was holding out until it was time for the trial. If this was not so, why would the Plaintiff make demands and then, only two months prior to the proposed trial date, suddenly change their position. If the report of Dr. Pioli was more favorable to their client, we would not be arguing this issue today. However, they took the gamble and lost because the findings of Dr. Pioli do support the opinion of Dr. Ostroff that Mr. Richardson was not being truthful, was malingering, and was not suffering from PTSD.

Given this sequence of events, and the argument set forth herein, the admissibility is justified.

In addition to the considerations outlined by Judge Arterton in Equant, she also refers to the 4-part test under Rule 37(c)(1) set forth by the Southern District of New York. The test requires a finding of surprise or prejudice suffered by the moving party, the ability of that party to cure the prejudice; and whether there was bad faith or unwillingness in failing to comply with the court order.

The facts of this case, as set forth in the History and as set forth below, do not satisfy the Court test to exclude the testimony of Dr. Pioli.

Counsel for the Defendants had every intention of obtaining the full range of tests and reviews only to be stopped and then hampered along the way (Massaro Affidavit). Counsel for the Defendants very well could have argued that Plaintiff refused testing up until November of 2004 when the Plaintiff suddenly flip-flopped their position. Whether they did not understand their decisions or were attempting to protect the limited opinion of Dr. Johnson, they placed everyone in a difficult position by their lack of commitment to permit testing. Therefore, since it was Plaintiff's counsel who determined that without having a specific outline and justification for the additional testing it could not go forward in March, 2004, the Defendants were forced to proceed without the testing and merely pointing to the absence of a complete study.

Putting aside the issues of surprise, because there is no evidence of this with months of requests by Defendants' counsel, the Court cannot find that the Plaintiff is prejudiced at this time. The case is now scheduled for jury selection on May 10, 2005. Counsel for the Defendants have already made counsel aware that Dr. Pioli can be deposed. Therefore, the claim of prejudice is moot.

In <u>Russell Dippel v. Farrell Lines, Inc., et al</u>, 2004 U.S. Dist. Lexis 2944 (S.D. N.Y. February 25, 2004), the court determined that late disclosure of an expert report by the plaintiff would be permitted because the interests of justice were better served by permitting the disclosure. The court even indicated that it would schedule the proceedings to accommodate a deposition and thus avoid prejudice.

The Plaintiff cites the case of <u>Hyun v. South Kent School</u>, 1997 U.S. Dist. Lexis 14622 (1997) in support of their position regarding Dr. Pioli. The facts and intent of disclosure in that action were very different than the instant action. In <u>Hyun</u> the plaintiff did not make any disclosures of witnesses until approximately two weeks before the trial and over one year after the disclosures were due. The plaintiff in <u>Hyun</u> did not provide any indication to the defendant that they intended to disclose an expert and the expert opinions involved the standard of care, damages and other

specialized areas. The plaintiff also would not consent to a postponement of the trial to permit the defendant to consult and retain experts.

None of the difficulties found in <u>Hyun</u> are present in this case because the Plaintiff knew the Defendants wanted additional review of their client, including tests such as WAIS, and that the Plaintiff had stopped the tests about eight months prior to the final resolution of the dispute in December. The Plaintiff in this case has an expert who has reviewed all the tests of Dr. Pioli and her report. The Plaintiff's very own expert indicated that these tests were appropriate subjective tests, but he was not requested to conduct them by Plaintiff's counsel. The area of the disclosure simply supplements the report of Dr. Ostroff in the area of testing, malingering and intellectual functioning. The Plaintiff has approximately three months due to unforeseen problems to conduct the deposition. Unlike the Plaintiff's counsel in <u>Hyun</u>, there is no objection from counsel to permit the deposition and, if necessary, supplement the report of Dr. Johnson. Therefore, <u>Hyun</u> is not appropriate from a factual basis nor from the argument of injustice or prejudice to the Plaintiff.

Given the facts, there cannot be a finding of bad faith or willfulness in failing to comply because the Defendants made two attempts to have this proposed expert

test Mr. Richardson but was not permitted and, thereafter, requested on numerous occasions well before trial as documented in the Plaintiff's exhibits.

### C. Dr. Pioli's Report Should Not Come As A Surprise To Plaintiff

The Defendants, from almost immediately after the first interview of Mr. Richardson, indicated that it was their belief further testing was needed. At no time did the Defendants indicate that Dr. Ostroff was the individual conducting the testing and, in fact, if Plaintiff had allowed the testing to go forward in March of 2004, the reports of Dr. Ostroff and the testing report of Dr. Pioli would have been produced well before the trial dates. The Plaintiff does not disagree that the tests that are performed are in any way inappropriate. In fact, the affidavit of Attorney Kalish indicates such tests are "objective" and there would be no way "to alter the actual results." (Kalish Affidavit, Paragraph 5.)

Additionally, counsel for the Plaintiff indicates that he did not realize the opinions to be provided including "malingering." (Kalish Affidavit, Paragraph 7.) However, from the deposition inquires of Dr. Johnson up until the actual report submitted by Dr. Ostroff there was an issue of malingering. For instance, Dr. Johnson was asked in his January 22, 2004 deposition session a number of questions in which he responded that he was evaluating for "malingering" among

other things (Exhibit P – Deposition at pages 125-133). Dr. Johnson was asked specifically about the MMPI test (Exhibit Q at pages 86, 128-129). He stated the MMPI may be useful if he wanted to do a complete evaluation (Exhibit Q at page 129).

Also, at the second session of his deposition Dr. Johnson again discussed the area of malingering and tests or evaluations (Exhibit R at pages 160-161, 164, 168, 173 and 178). Additionally, Dr. Johnson also refers to the review of school records and performance in making assessments of an intellectual deficit (Exhibit S at page 166). However, Dr. Johnson did not have these records available for him from Plaintiff's counsel. He stated that school records possibly could be relevant "all information about him would be helpful in my understanding the case." (Exhibit T at pages 78-79).

Therefore, the Defendants' inquiry into the areas of intellectual functioning, PTSD, temperament and malingering are precisely the issues to be reviewed in further testing and Dr. Pioli should be permitted to testify regarding these issues limited to the evaluations consistent with her testing and the reliability and acceptance of the procedures utilized by her as set forth in counsel's affidavit.

BMF05026                              13

THE DEFENDANTS

By: /s/ Barbara B. Brazzel-Massaro
Barbara Brazzel-Massaro
Associate City Attorney
OFFICE OF THE CITY ATTORNEY
999 Broad Street - 2nd Floor
Bridgeport, CT 06604
Tel: #203/576-7647
Fed. Bar #05746

## CERTIFICATION

This is to certify that a copy of the foregoing "Defendants' Response to the Plaintiff's Motion to Preclude Dr. Pioli" has been mailed, postage prepaid, on this 18th day of February, 2005, to:

**Kenneth D. Heath, Esq.**
**Wiggin & Dana**
**One Century Tower**
**P.O. Box 1832**
**New Haven, CT 06508**

**Daniel Kalish, Esq.**
**Perkins Coie LLP**
**1201 Third Avenue, Suite 4800**
**Seattle, WA 98101-3099**

/s/ Barbara B. Brazzel-Massaro
Barbara Brazzel-Massaro

BMF05026                         14