UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN RICHARDSON           :
                           :
         Plaintiff,        :     CIV. NO. 3:01CV1719 (EBB)
                           :
vs.                        :
                           :
WILLIAM MIRANDA, ET AL     :
                           :
         Defendants        :     FEBRUARY 18, 2005

## AFFIDAVIT

I, Barbara Brazzel-Massaro, being during sworn, hereby depose and say:

1. I am over the age of 18 and believe in the obligation of an oath.

2. I am admitted to practice in the United States District Court for the District of Connecticut.

3. I am employed by the City of Bridgeport as an attorney and part of my responsibilities involve representing the Defendants in this action.

4. As counsel for the Defendants, on or about November, 2003, I received notice of an expert by the name of Dr. Johnson who was to testify for the Plaintiff.

BMF05027                        1

5. I received the report of Dr. Johnson and immediately began a search for an expert to review his findings and possibly disclose as an expert.

6. I was able to engage the services of Dr. Ostroff to review the case and immediately provided him with all the information I could in the file to be prepared to review the information and, if necessary, provide an expert opinion.

7. Dr. Johnson's deposition was scheduled for January so that the Defendants could complete it and then determine whether the Defendants needed to disclose any expert. The deposition of Dr. Johnson began on January 25, 2004 but was not completed.

8. Dr. Ostroff did go to the correctional facility to interview Mr. Richardson in February, 2004 so that Defendants could obtain some preliminary advice and direction for the action.

9. The deposition of Dr. Johnson was not completed and no date set when Dr. Ostroff interviewed Mr. Richardson. The deposition was finally completed on May 5, 2004.

10. Even though the deposition of Dr. Johnson was not complete, the Defendants still proceeded to complete the analysis and reports.

11.     I spoke to Plaintiff's counsel for the original evaluation by Dr. Ostroff. The Plaintiff was not concerned about his intentions or type of evaluation at this time.

12.     I spoke to counsel almost immediately after the February 27, 2004 visit by Dr. Ostroff about the need for additional testing as recommended by our expert.

13.     Because Dr. Ostroff believed it was necessary to conduct additional tests that would be more appropriate to the claims of Mr. Richardson regarding his PTSD, I immediately attempted to get a date so that it would be done prior to the continued deposition of Dr. Johnson.

14.     Although I scheduled some immediate dates, I realized the tests could not be done without speaking to Plaintiff's counsel. A first meeting of March 12, 2004 was cancelled because Plaintiff's counsel did not return the calls. At some time I was able to contact Plaintiff's counsel and to get permission. Dr. Pioli was prepared to go on Saturday, March 27, 2004.

15.     When I arrived in my office on March 29, 2004, I learned for the first time that Dr. Pioli's visit had been cancelled by Plaintiff's counsel.

16.     From March 29th until after the continued deposition of Dr. Johnson in May, 2004, I spoke on numerous occasions to counsel about the need for additional tests.

BMF05027                                    3

17. I never provided the name of Defendants' expert to the Plaintiff because it was not known if he would be reviewing additional tests to have a full evaluation.

18. During the course of my discussions with both Attorney Kalish and Attorney Heath, I indicated that I believed Defendants had a right to a full evaluation without disclosing what the concerns of the Defendants were. I did indicate that the purpose of the evaluation was to provide specific tests such as the MMPI and to do whatever the doctor believed was relevant for our evaluation. I did not limit the evaluation and specifically informed counsel that I was not the expert and could not determine what was necessary so I would leave it to the doctor who was testing.

19. Because Plaintiff would not let Defendants conduct additional tests, the defendants produced a report that included the fact that they believed additional testing was necessary.

20. Defendants hesitated to produce this report because they were placed in a position of having possible supplemental reports completed that would negate their expert's findings.

21. Only after the Defendants submitted their expert report did Plaintiff's counsel agree to allow Dr. Pioli specifically to perform the tests.

22. As part of the agreement, Defendants' counsel promised to send her reports before the scheduled deposition of Dr. Ostroff.

23. Counsel never suggested that Dr. Pioli's report and testing would not become part of the case. In fact, her results could have been consistent with Dr. Johnson, as well as consistent with Dr. Ostroff.

24. The Plaintiff's choice to wait and not allow a full report by Dr. Ostroff in March caused the report to be filed so as to prevent admission if it was not favorable, but Plaintiff could use it to support Plaintiff's case if it helped.

_____
Barbara Brazzel-Massaro

Sworn and subscribed before me

this 18th day of February, 2005

_____
John H. Barton
Commissioner of the Superior Court

BMF05027                        5