UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRIAN RICHARDSON, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01CV1719 (EBB) |
| v. | : | |
| WILLIAM MIRANDA, ET AL., | : | March /, 2005 |
| Defendants. | : | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF DR. LIANE M. PIOLI**

Defendants ask this Court to allow Dr. Liane M. Pioli to testify at trial even though she was disclosed as an expert more than a year after the deadline, and the only reason she was allowed to examine Mr. Richardson was because Defendants represented that she would merely be providing objective test results to the existing experts in the case. This late disclosure should not be allowed by this Court. Although Defendants provide several arguments in an effort to save Dr. Pioli's testimony, none of them are persuasive.

**I.    This Court Should Preclude Dr. Pioli's Testimony Because It Is Untimely.**

As shown in Plaintiff's initial memorandum, this Court imposed a deadline of December 15, 2003 for all expert disclosures. Pl.'s Mot. at 2. In early 2004, Defendants sought leave from this Court to disclose *one* expert to discuss Mr. Richardson's alleged malingering and alleged PTSD. Ex. B. This motion was granted, and Defendants disclosed Dr. Robert Ostroff on September 10, 2004. But on January 27, 2005, Defendants, without even attempting to obtain permission from this Court, decided to disclose Dr. Pioli on the

*exact same issues* already discussed by Dr. Ostroff. This disclosure is substantially late and should not be allowed.

### A. Dr. Pioli's Late Disclosure Substantially Prejudices Plaintiff.

In an effort to save this testimony, Defendants now contend that because this trial has been delayed for three months due to Officer Reyes' medical emergency, Plaintiff is not prejudiced by the late disclosure. Defs.' Response at 6. This is wrong.[1] If Dr. Pioli were allowed to testify at trial, Plaintiff's attorneys would have to research her history, read transcripts of her prior deposition, discuss her opinions with Dr. David Johnson, take her deposition, prepare *Daubert* motions, consider obtaining additional rebuttal experts, prepare for her cross-examination, and possibly move this Court for additional expert fees. There can be no doubt that these efforts will take a significant amount of time and energy, time and energy that could be used to prepare for Plaintiff's case in chief or get ready for the sixteen fact witnesses that Defendants have already identified will testify at trial. *See Engleson v. Little Falls Area Chamber of Commerce*, 210 F.R.D. 667 (D. Minn. 2002) (excluding expert disclosed five months prior to trial).

But even more important, it is still unclear what possible benefit Dr. Pioli will provide to Defendants' case. Pl.'s Mot. at 8. Dr. Pioli's expert report discusses whether Mr. Richardson has PTSD and whether he is malingering, the same issues on which Dr. Ostroff opines. Defendants have failed to provide any explanation (other than simple cumulative evidence) of why Dr. Pioli is important to their case.

---

[1] While Officer Reyes' medical situation justified delaying the trial, it should not convey a strategic advantage to Defendants by justifying a late disclosure.

**B.    Defendants' Late Disclosure Is Not Substantially Justified.**

Defendants further attempt to preserve Dr. Pioli's testimony by claiming that they were substantially justified in disclosing her six days prior to the original trial date and without first trying to get permission from this Court. Defs.' Response at 6-8. Defendants argue that it was Plaintiff who refused to allow Dr. Pioli to visit him and improperly insisted that Defendants provide a premature expert disclosure. *Id.* at 6. This argument has no merit.

For almost a year, Defendants asked to have an unidentified doctor visit Mr. Richardson to perform further testing that would then be used against him in his civil lawsuit. *See* Exs. D, E, K. Considering these circumstances, it comes as no surprise that Mr. Richardson would want to know who this person was and what test this person intended to conduct. Defendants have failed to explain how Mr. Richardson's reasonable request for more information somehow justifies their decision to disclose an additional expert six days prior to the first trial.

Defendants are also wrong when they assert that Plaintiff's counsel somehow insisted that Defendants "disclose prematurely the exact nature of Defendants' concerns or opinions." Def.'s Response at 6. This simply is incorrect, and the record speaks for itself. Plaintiff's counsel simply asked who was going to perform the tests, what tests this person intended to conduct, and why this could not have been accomplished in Dr. Ostroff's meeting with Mr. Richardson. Ex. F. This was not an attempt to obtain "premature disclosure," but simply an effort by Plaintiff's counsel to get a sense of why Defendants wanted to examine Mr. Richardson for a second time.

In addition, Defendants' contention that they were substantially justified to provide such a late disclosure is belied by their conduct. On February 3, 2004, Defendants sought

permission from this Court to disclose an expert after the deadline. The motion was granted, and Defendants subsequently disclosed Dr. Ostroff on September 10, 2004. For this reason, if Defendants wanted to disclose another expert, or obtain another mental examination of Plaintiff, they clearly understood how to obtain an order from this Court to do so.[2] There simply is no justification for them to disclose Dr. Pioli as an expert without any attempt to first seeking this Court's permission.[3]

## II. Dr. Pioli Should Not Be Allowed To Testify Because Plaintiff Consented to Her Involvement on the Understanding that She Would Serve Merely as a Test Administrator.

As noted in Plaintiff's initial motion, Mr. Richardson allowed Dr. Pioli to examine him based on the understanding that she would take objective tests and then forward the results to the two existing experts on PTSD and malingering, Dr. Robert Ostroff and Dr. David Johnson. Pla's. Mot. at 8-9. This understanding was clear from the correspondence. *Id.*; Ex. D, E.

In their opposition, Defendants apparently do not deny that the correspondence illustrates that Dr. Pioli was allowed to see Mr. Richardson only on the condition that she

---

[2] Plaintiff can only assume that the reason Defendants decided to get this Court's permission before disclosing Dr. Ostroff, but did not attempt to get this same permission for Dr. Pioli, is because they understood that this Court would have likely denied the request. As noted earlier, there simply is little justification for allowing Defendants to have a second expert on PTSD and malingering this close to trial.

[3] In addition, Defendants claim that Plaintiff flip-flopped on his decision to allow Dr. Pioli to conduct testing. Defs.' Response at 8. Nothing could be further from the truth. When these discussions started, Plaintiff had no idea what tests were going to be conducted, who was going to conduct them, and how long it was going to take. Once Plaintiff realized that Defendants wanted to have Dr. Pioli perform WAIS-II and MMPI tests, Plaintiff's counsel then promptly contacted

conduct two objective tests. In fact, Defendants never explain why they neglected to tell Plaintiff that Dr. Pioli was actually asked to "determine whether Mr. Richardson is malingering or distorting his physical and mental symptoms in order to gain monetary rewards in a lawsuit against the City of Bridgeport." Ex. N. And tellingly, they never mention the letter where Defendants ask for further testing so that "their expert can complete his report." Ex. E. These omissions are revealing, and they illustrate that even Defendants cannot explain their communications to Plaintiff about Dr. Pioli's role in this case.

Defendants' only argument on this point is that Plaintiff could not have been surprised that Dr. Pioli was going to provide an expert opinion regarding malingering and PTSD because questions about these topics were given to Dr. Johnson during his deposition. Def.'s Response at 12-13. This argument is hard to take seriously. Plaintiff understood that malingering and PTSD were issues in this case, but he understandably thought that these opinions were going to be discussed solely by Defendants' disclosed expert on these issues, Dr. Ostroff. The record, in fact, shows that both Plaintiff and his attorneys were extremely surprised when Dr. Pioli was disclosed as an expert in this case.[4] Kalish Decl. at ¶ 7; Ex. T, U.

---

Dr. Johnson to see if this was appropriate. Kalish Decl. at ¶¶ 4-5. After the discussion with Dr. Johnson, Plaintiff allowed these objective examinations to take place. Id. at ¶ 6.

[4] Contrary to Defendants' argument, the *Hyun v. South Kent Sch.*, 1997 WL 597122 (D. Conn. 1997), case, where Judge Nevas excluded Mr. Hyun's expert because of a late disclosure is instructive. Like Mr. Hyun, Defendants here have disclosed, without any justification, an expert roughly a year late and one week prior to the first scheduled trial, resulting in prejudice to the other party. Further, similar to the situation in *Hyun*, Mr. Richardson had absolutely no idea that Defendants would disclose an additional expert other than Dr. Ostroff prior to trial. In fact, considering that Dr. Pioli's examination of Mr. Richardson went well beyond the scope of what was

### III. Conclusion

For the foregoing reasons, this Court should grant Plaintiff's motion to preclude Dr. Pioli from testifying at trial.

DATED: March 18, 2005

Kenneth D. Heath (ct 26359)
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel: 203-498-4400
Fax: 203-782-2889
E-mail: kheath@wiggin.com

Daniel Kalish (ct 24350)
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Tel: 206-359-8000
Fax: 206-359-9000
E-mail: dkalish@perkinscoie.com

Attorneys for Plaintiff
Brian Richardson

---

represented to Plaintiff's counsel. the circumstances here warrant preclusion more than they did in *Hyun*.

## CERTIFICATE OF SERVICE

On March 18th, 2005, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following documents:

Barbara Brazzel-Massaro, Esq.
City Attorney's Office, City of Bridgeport
999 Broad Street
Bridgeport, CT 06604

|     |     |
| --- | --- |
| __  | Via hand delivery |
| _X_ | Via U.S. Mail, 1st Class, Postage Prepaid |
| __  | Via Overnight Delivery |
| __  | Via Facsimile |
| __  | Via E-filing |

I certify under penalty of perjury under the laws of the State of Connecticut that the foregoing is true and correct.

DATED at New Haven, CT, this 18th day of March, 2005.

_____
Kenneth D. Heath